Jackie OZENNA, Appellant,

v.

STATE of Alaska, Appellee.

No. 4748.

Supreme Court of Alaska.

Nov. 14, 1980.

John D. Van Winkle, Jr., Larson, Timbers & Van Winkle, Nome, for appellant.

George W. Edwards, Dist. Atty., Nome, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

MATTHEWS, Justice.

On the evening of July 9, 1978, around midnight, a break in was reported at a general store in Nome. Nome police chief, Edward Ward, Jr., and Officer Robert Kauer responded immediately and spent about one hour investigating the burglary. The store manager told them that he believed one or two hand guns and some ammunition had been taken. A security check of the store two hours earlier had revealed no signs of a burglary. At approximately 1:00 A.M. Ward and Kauer drove off to look for suspects.

About one block from the store they spotted Jackie Ozenna, the appellant here. There were other people on the streets, but Ozenna drew the officers' attention because he was walking with his right hand placed across his body under his coat at the belt line. Ward commented to Kauer that Ozenna had a prior record. Kauer then drove around the block so that they could once again observe Ozenna. When they saw him again Ozenna had progressed some distance up the street with his hand still in the same position. At that time Kauer also observed several protrusions in the shoulders and sleeves of Ozenna's coat. Kauer stopped the car, approached Ozenna on foot, asked him for identification and briefly questioned him. One of his questions was why Ozenna was keeping his hand under his coat, to which he received a mumbled incomprehensible response. Kauer repeated the question and again received an incomprehensible response. Ozenna kept his hand beneath his coat throughout this conversation. Kauer then did a pat–down weapons search of Ozenna. The search revealed a long barrelled handgun tucked in Ozenna's pants with the grip protruding above his belt line where he had been holding his hand. This gun turned out to be one stolen from the burglarized store. The officers then arrested Ozenna.[1]

Ozenna was charged with burglary not in a dwelling,[2] felon in possession of a concealed weapon[3] and carrying a concealed weapon.[4] He moved to suppress the gun found during the search, and his motion was denied. He then entered no contest pleas to all three charges, reserving the right to appeal the dispositive search and seizure issue.[5]

In *Coleman v. State*, 553 P.2d 40 (Alaska 1976) we adopted the rule set forth in *Terry v. Ohio*,

> that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and noth-

---

1. A subsequent post arrest search revealed that the protrusions Kauer had observed were several cans of food and some salami which Ozenna had stuffed in the pockets and sleeves of his coat.

2. Former AS 11.20.100, recodified at AS 11.46.310.

3. Former AS 11.55.030, recodified at AS 11.61.200(a)(1).

4. Former AS 11.55.010, recodified at AS 11.61.220(a)(1).

5. Pursuant to *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978); and *Cooksey v. State*, 524 P.2d 1251, 1255–56 (Alaska 1974).

ing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968). However, we stated in *Coleman* that the *Terry* rule would apply as a matter of Alaska constitutional law [6] only "where the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred...." [7]

In imposing this limitation, we noted in footnote 17 of the *Coleman* opinion our agreement with the view expressed by Justice Brennan's dissent in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Justice Brennan, quoting Judge Friendly, distinguished possessory offenses from serious crimes and stated that *Terry* should apply only to the latter:

> [*Terry*] was meant for the serious cases of imminent danger or of harm recently perpetrated to persons or property, not the conventional ones of possessory offenses.

407 U.S. at 153, 92 S.Ct. at 1926, 32 L.Ed.2d at 621.

We agree with the well reasoned oral decision of the superior court that the stop and pat down search conducted here were reasonable,[8] judged against the objective standard of *Terry*: whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." 392 U.S. at 21–22, 88 S.Ct. at 1879–1880, 20 L.Ed.2d at 906. Since Ozenna was stopped during the course of an investigation for a serious property crime the *Coleman* limitation to *Terry* was satisfied.

Several circumstances justified the investigative stop by Officer Kauer. He had knowledge that a burglary, in which one or more handguns and ammunition had been taken, had recently been committed near where Ozenna was walking. He knew Ozenna had a criminal record.[9] The hour was late, the protrusions in Ozenna's coat were unusual, and Ozenna's hand was positioned in a manner which suggested that he was carrying a handgun.

The reasons justifying the stop also justify the weapons search under the circumstances of this case. The need for such a search seems particularly compelling in view of the fact that the burglary had involved at least one handgun and Ozenna kept his hand placed in a manner suggesting that he was carrying an unholstered gun. The gun uncovered by the search should not be suppressed.

The judgment is therefore AFFIRMED.

---

**6.** Alaska Const. Art. I, § 14 provides:

> *Searches and Seizures.* The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**7.** 553 P.2d at 46.

**8.** The superior court concluded:

> [The police officer] had the knowledge that a serious crime was committed within an hour or two of the stop, the defendant was within a block or two of the burglary, he was out after 1:00 a. m. in the morning, in a small town, which is unusual, the defendant had no reasonable explanation of why he was out, his mannerisms by mumbling answers to the

officer and having his hand inside of his parka were suspicious. His parka was unzipped at the waist level and he had lumps in his parka, indicating that he had something under his coat. All of this was sufficient reason to stop the person, the defendant, and the officer had the right, for his own protection, to pat down the defendant. Under all of the circumstances there was a reasonable suspicion for the officers to stop and question the defendant.

**9.** The police record of one who is subjected to an investigative stop is a legitimate factor to be considered in determining whether there is sufficient suspicion to justify the stop. *See United States v. Owens*, 472 F.2d 780 (8th Cir. 1973); *United States v. Wickizer*, 465 F.2d 1154 (8th Cir. 1972).