Norman METZKER, Appellant,

v.

STATE of Alaska, Appellee.

No. 5919.

Court of Appeals of Alaska.

Jan. 28, 1983.

Dennis P. James, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before COATS and SINGLETON, JJ., and RABINOWITZ, Justice.*

OPINION

PER CURIAM.

Norman Metzker appeals from a district court conviction for operating a motor vehicle while under the influence of intoxicating liquor in violation of AS 28.35.030(a)(1). After a jury verdict, Metzker was sentenced to 60 days in jail with 50 days suspended, a fine of $800 with $350 suspended, and revocation of his driver's license for one year. The judgment provided for the issuance to Metzker of a limited driver's license. The partial suspension of sentence and fine were conditioned upon Metzker's avoidance of similar violations for a period of one year.

Metzker has asserted five separate specifications of error on appeal. His first point is that the district court erred in failing to dismiss the complaint on the ground that the investigating officer did not have adequate reason to stop him. Since we have concluded that this issue is dispositive, we limit our factual discussion to the events which led to the police stop of Metzker's vehicle and to his subsequent arrest for operating a motor vehicle while under the influence of intoxicating liquor.

Early in the morning on November 18, 1980, Alaska State Trooper Peters was dispatched to a problem with a vehicle and a moose near Mile 11 on the Glenn Highway. At trial, Trooper Peters testified that he had received a call that there was an injured moose approximately three-quarters of a mile west or south of the Fort Richard-

---

* Rabinowitz, Justice, sitting by assignment made pursuant to article IV, section 16 of the constitution of Alaska.

son overpass. Unable to find the incident in that area, he continued on approximately two more miles to Ship Creek because, as he testified: "[P]eople alot of times aren't as accurate as we are ... in our descriptions of where on the highway they're talking about." As he passed Ship Creek, he spotted a pickup truck parked off the road on the opposite side (on the outbound lane of the lanes headed toward Eagle River) with the lights on. As he drove past, Trooper Peters shined his spotlight in the direction of the pickup and noticed a moose standing fifty feet off the roadway.

Trooper Peters assumed that this was the incident he had been dispatched to investigate, although he saw no evidence of damage to the pickup truck, and he could not tell if the moose was in distress. As Trooper Peters drew even with the pickup, the truck began moving away. At this point, Trooper Peters began to suspect that the driver might have been poaching.[1] Proceeding approximately one quarter to one half of a mile down the road, Trooper Peters turned around to investigate. He eventually caught up to Metzker's vehicle and signaled Metzker to stop by activating his emergency lights. Prior to making the stop, Trooper Peters observed no signs of erratic driving on Metzker's part. Upon being stopped, Metzker immediately left his pickup truck and walked towards Trooper Peters, who then noticed a strong odor of alcohol on Metzker's breath. When asked what he had been doing stopped near the

moose, Metzker replied that he did not know, that he was just stopped. The trooper then walked around the front of the vehicle to check for damage to see if Metzker had possibly been involved in an accident with the moose. The trooper found no damage. The trooper then gave Metzker several field sobriety tests. After these tests were administered, Metzker was arrested for the offense in question.

Metzker contends that Trooper Peters' investigatory stop violated his federal and state constitutional rights against unreasonable searches and seizures. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that, although probable cause was not required for an investigatory stop, such action was subject to fourth amendment protections against unreasonable searches and seizures.[2]

> [T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion ... [I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate.[3]

In *Coleman v. State,* 553 P.2d 40 (Alaska 1976), the Alaska Supreme Court held that, as a matter of state constitutional law,[4] the

1. Trooper Peters testified in part:

   I flipped my spotlight, it's an aircraft landing light that I have on my patrol car, onto the vehicle and shined it on the vehicle and past the vehicle as I was moving west and I saw a moose standing out in the—well, off the edge of the roadway, probably 50 feet. So I—at that point I—I thought that this was the incident that I had been called to and I wasn't sure at that point whether the moose had been involved in an accident with the vehicle. The moose was standing up but a lot of times we'll get a moose with a broken leg that's still standing up. And so I had to—I had to go down about a quarter of a mile to a place in the median strip where I could turn around. Well, just as I turned off my spotlight I noticed the pickup truck took off. And I was beginning to wonder at that point whether this individual in the pickup

truck had been trying to poach the moose or something. It was very early in the morning, there was no other traffic around and sometimes people attempt that sort of thing.

2. The fourth amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV.

3. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968) (footnote and citations omitted).

4. Alaska Const., art. I, § 14 provides, in pertinent part: "The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated."

*Terry* rule would apply only "where the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred...."[5] *Id.* at 46. *Accord, Ozenna v. State,* 619 P.2d 477, 479 (Alaska 1980). The court has noted on three occasions its agreement with the view expressed by Justice Brennan in *Adams v. Williams,* 407 U.S. 143, 153, 92 S.Ct. 1921, 1926–27, 32 L.Ed.2d 612, 621 (1972) (dissenting opinion), that " '[*Terry*] was meant for the serious cases of imminent danger or of harm recently perpetrated to persons or property, not the conventional ones of possessory offenses.' " *Coleman, supra,* 553 P.2d at 46 n. 17; *Ozenna, supra,* 619 P.2d at 479; *Mattern v. State,* 500 P.2d 228, 233 n. 15 (Alaska 1972). Justice Brennan endorsed language by Judge Friendly that would restrict *Terry* to circumstances where a person is " 'reasonably suspected of being about to commit or having just committed a crime of violence.' " *Terry,* 407 U.S. at 153, 92 S.Ct. at 1926, 32 L.Ed.2d at 621.

In *Ozenna v. State, supra,* the supreme court found that the "*Coleman* limitation" on the *Terry* rule was satisfied when the offense involved was the theft of one or more handguns and ammunition. The court termed this a "serious property crime," and went on to examine separately the reasonableness of the arresting officer's suspicion that Ozenna had committed the offense. 619 P.2d at 479. Similarly, in *Ebona v. State,* 577 P.2d 698 (Alaska 1978), the court undertook a two-step analysis in evaluating the investigatory stop of a motor vehicle that a police officer had observed weaving back and forth within its lane of traffic. *Id.* at 699, 701. First, the court found that the type of offense involved in the case was of the degree of seriousness necessary to survive the Alaska limitation on the *Terry* principle. It was established that the officer had had an actual suspicion that "an imminent public danger existed by virtue of the manner in which the Ebona vehicle was being operated." *Id.* at 701. Second, under the standard supplied by *Terry,* the court examined the reasonableness of the officer's suspicion "in light of all the facts known to the officer prior to the investigatory stop." *Id.*

We find that the stop of the Metzker vehicle in this case fails to meet the standards set up by either prong of the *Coleman* test. Trooper Peters had been dispatched to investigate a possible accident involving a moose and a vehicle. He testified that, at the time that he spotted Metzker's pickup truck and the moose standing fifty feet away, he observed the front and side of the truck and could see no damage. He could not tell if the moose was in any distress. Once Officer Peters noticed that the pickup had begun to drive away, his suspicions with respect to an accident involving a moose and a vehicle gave way to a new concern that the driver of the pickup might have been a poacher.[6]

We think that these facts reveal no basis for suspicion on the part of Trooper Peters that a serious offense had occurred within the meaning of *Coleman.* Nothing at the scene of the arrest indicated the existence of an imminent public danger, and there was no sign of recent serious injury to person or property. In such a case, we believe that *Coleman* stands as a bar to invocation of the "reasonable belief" standard for investigatory stops found in *Terry v. Ohio.*[7]

---

5. We have recognized that the *Coleman* rule for the authorization of investigatory stops is more restrictive than the federal rule under *Terry. Ebona v. State,* 577 P.2d 698, 700 (Alaska 1978). *See also* J.M. Feldman, Search and Seizure in Alaska, A Comprehensive Review, 7 U.C.L.A.—Alaska L.Rev. 75, 102–05 (1977).

6. *See supra* note 1. On cross-examination, Officer Peters described his thoughts that a poaching operation might be going on as "one of the possibilities."

7. *Compare Pierce v. State,* 627 P.2d 211, 215–16 (Alaska App.1981), where the offense involved was armed robbery. We upheld the investigatory stop of the lone pedestrian in the area of a robbery where the police knew that one of the robbers was probably on foot, and where the suspect matched the description obtained from the victims. *See also Uptegraft v. State,* 621 P.2d 5, 7–8 (Alaska 1980) (armed robbery met *Coleman* standard for seriousness of offense).

**150**

Even if we were to find the *Coleman* limitation satisfied in this case, we think it clear that the situation confronted by Trooper Peters was not sufficient to give rise to the reasonable belief either that an offense had been committed, or that Metzker had engaged in illegal conduct. The standard under the second prong of the *Coleman* test is an objective one, *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); *Ebona v. State,* 577 P.2d 698, 700 n. 10 (Alaska 1978); *see Ozenna, supra,* 619 P.2d at 479, and we must therefore consider the circumstances known to Trooper Peters at the time of the stop.

There were no facts to indicate that the Metzker vehicle had been involved in an accident with a moose and no indication of erratic driving on the part of Metzker. Trooper Peters' suspicion that a poaching operation was a possibility was predicated on nothing more than observing a pickup truck stopped within fifty feet of a moose early in the morning. Without more, this suspicion does not rise above the level of a mere hunch. We hold that such a basis was inadequate for the investigatory stop made by Trooper Peters in this case.

We conclude, for the foregoing reasons, that the district court erred in failing to dismiss the complaint based upon a violation of Metzker's constitutional rights against unreasonable searches and seizures.[8]

REVERSED.

BRYNER, C.J., not participating.

---

**8.** *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).