**Michelle L. SMITH, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2348.**

Court of Appeals of Alaska.

June 17, 1988.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Karla Taylor–Welch, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Michelle L. Smith was initially charged with driving while her license was suspended (DWLS). She eventually entered a no contest plea to the lesser offense of driving without a valid operator's license. Smith preserved for appeal the claim that she was subjected to an unlawful investigatory stop. We affirm.

The charge in this case arose when Alaska State Trooper Ralph Reyes saw Smith driving an automobile for which a "locate" had been issued. The dispatcher informed Trooper Reyes that the license of the automobile's registered owner had been suspended. The owner was described as a Caucasian female, sixty-four inches tall, approximately twenty-one-years old, weighing 125 pounds, and having brown hair and blue eyes.

From his patrol car, Trooper Reyes had only a limited view of Smith. Relying mainly on the fact that Smith was a Caucasian female who appeared to be about the right height and age, Reyes concluded that she matched the description on the locate. Reyes pulled Smith over and asked for her license. After he did so, he discovered that

Smith was not the registered owner of the vehicle and did not match the owner's physical description in several particulars, including her height, weight, age, and hair color. Nevertheless, when Smith was unable to produce a license, Reyes radioed for a computer check and learned that her license had been suspended. Smith was subsequently charged with DWLS.

Smith moved to suppress, contending that her stop was unlawful. She argued that the stop was made without probable cause and that it did not meet the *Coleman/Ebona* standard for an investigative stop because there was no reasonable suspicion and because DWLS is not a crime involving imminent public danger or serious harm to persons or property. *See Coleman v. State,* 553 P.2d 40, 46 (Alaska 1976); *Ebona v. State,* 577 P.2d 698, 700 (Alaska 1978).

 Following a hearing, District Court Judge Christopher E. Zimmerman concluded that the limited view obtained by Reyes was insufficient to support a finding of probable cause. Judge Zimmerman also found that the *Coleman/Ebona* standard was not met because of the absence of imminent public danger or serious harm to persons or property. Judge Zimmerman nonetheless concluded that Reyes had reason to believe that Smith might be the registered owner of the automobile when he pulled her over and that Reyes' actions were reasonable under the circumstances. The judge likened the situation to a voluntary contact between a police officer and a citizen involving only a generalized request for information. *See Howard v. State,* 664 P.2d 603, 608 (Alaska App.1983). On this basis, he denied the motion to suppress.[1]

 We are unable to agree with the district court's characterization of the stop in this case as a voluntary contact between a citizen and the police. Smith was pulled over by Reyes, a uniformed trooper in a patrol vehicle. There is no indication that Reyes told Smith that she was free to leave at any point before he asked for her license. Because no reasonable person would feel free to leave under the circumstances, the stop and request for identification must be deemed to have involved a fourth amendment seizure. *Id.*

In our view, however, it does not follow that Judge Zimmerman erred in finding Smith's stop to be reasonable and in denying the suppression motion. Specifically, we reject Smith's contention—which was apparently adopted by the court below— that DWLS fails as a matter of law to meet the *Coleman/Ebona* imminent public danger criterion.[2]

Driver's licenses may be suspended for a variety of reasons that are generally related to public safety. *See, e.g.,* AS 28.15.-161–28.15.211; AS 28.20.090; AS 28.20.270; AS 28.20.330. It may well be correct, as Smith argues, that in many situations licenses are suspended for reasons having to do with a driver's inability to establish financial responsibility. While the long-range objective of such a suspension is undoubtedly to promote public safety, there is little reason to suppose that a driver whose license has been suspended for failing to provide proof of insurance poses any imminent public danger.

Yet in many other situations, licenses are suspended precisely because a driver has, through past driving conduct or offenses, demonstrated an actual inability to drive safely. When a driver in this category is behind the wheel, there is a legitimate ba-

---

**1.** On appeal, Smith asserts that Judge Zimmerman's ruling should be construed as a factual finding that, because of the dissimilarities between Smith's actual appearance and the physical description of the registered owner of the car Smith was driving, Trooper Reyes did not even have a reasonable suspicion that Smith was committing the offense of DWLS. We reject this interpretation of the trial court's ruling. We have carefully listened to Judge Zimmerman's findings and are satisfied that the judge concluded that Reyes' limited observation of Smith gave him a reasonable suspicion that Smith was the registered owner of the car she was driving and that she therefore was committing the offense of DWLS. This factual finding is not clearly erroneous.

**2.** On appeal, we may affirm the trial court's ruling on an issue of law on grounds other than those relied on by the trial court. *See Rutherford v. State,* 605 P.2d 16, 21 n. 12 (Alaska 1979).

sis for concluding that there may be imminent danger to other motorists. In most situations that—as in the present case—an officer who has a reasonable suspicion that a motorist is committing the offense of DWLS will not know the underlying basis for the license suspension. We believe that the level of danger in such instances is sufficiently high to permit a traffic stop.

■■■■ *Coleman* and *Ebona* do not require a contrary finding. Under the *Coleman/Ebona* standard, an officer who performs a traffic stop need not be certain that imminent public danger exists or that a crime involving serious harm to persons or property has recently been committed. Rather, the *Coleman/Ebona* standard requires only a reasonable suspicion. Where, as here, there are grounds to believe that the license of a driver has been suspended, and there is no information to rule out the possibility that the suspension was directly related to the driver's actual inability to drive safely, there is, at a minimum, reasonable suspicion to believe that imminent public danger exists. In our view, when there is a reasonable suspicion that a person whose license has been suspended is driving, the situation is one "requiring immediate police response to protect the public...." *Coleman*, 553 P.2d at 45–46 n. 17. Little purpose would be served in requiring an officer in such a situation to confirm his reasonable suspicion by awaiting some actual manifestation of reckless or negligent driving or by postponing any action until probable cause can be obtained.

While we can certainly conceive of criminal misconduct involving greater or more imminent public danger than DWLS, we cannot dismiss as insignificant the danger posed by an unlicensed driver whose past driving has been found so deficient as to warrant suspension of an operator's license. The offense of DWLS is not a minor traffic infraction. It is, instead, a class A misdemeanor for which mandatory minimum jail terms and a maximum term

of one year have been established. *See* AS 28.15.291; AS 12.55.135(a). In this regard, the seriousness of the offense—and, by extension, the legislature's perception of the seriousness of the inherent danger of the offense—ranks close to the seriousness of driving while intoxicated, a crime the supreme court has expressly found to meet the imminent public danger criterion. *See Ebona*, 577 P.2d at 700–01. Balancing the minimal intrusiveness of a routine traffic stop and request for a license against the nature and immediacy of the danger posed by the offense, we conclude that a stop for DWLS based on reasonable suspicion falls within the boundaries of the *Coleman/Ebona* rule.[3]

The conviction is AFFIRMED.

---

**3.** In reaching this conclusion, we additionally emphasize that traffic stops based on reasonable suspicion of DWLS do not appear to pose the potential for opening "the sluicegates for serious and unintended erosion of the protections of the Fourth Amendment," *Adams v. Williams*, 407 U.S. 143, 153, 92 S.Ct. 1921, 1927, 32 L.Ed.2d 612 (1972) (Brennan, J., dissenting), that was of concern to the Alaska Supreme Court in *Coleman*, 553 P.2d at 45–46 n. 17.