769 P.2d 452 (1989)
STATE of Alaska, Petitioner,
v.
G.B., a minor, Respondent.
No. A-2598.
Court of Appeals of Alaska.
March 3, 1989.
*453 Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for petitioner.
Andy Haas, Alex Swiderski, Asst. Public Defenders, Palmer, and John Salemi, Acting Public Defender, Anchorage, for respondent.
Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION
BRYNER, Chief Judge.
In this case, the State of Alaska petitioned for review of an order entered by Superior Court Judge Mark C. Rowland, suppressing certain evidence obtained in the course of an investigative stop of G.B., a minor. We granted review and ordered briefing because the case presents an important and unresolved question of law which involves a substantial public interest that might be compromised in the absence of immediate review. See Alaska R.App.P. 402(b)(2). We reverse the superior court's suppression order.
The facts in this case are undisputed. At about noon on February 17, 1988, an employee of a video rental store in Wasilla saw a young man behind the counter of the store and confronted him. The young man ran from the store. The employee called the police, reported a suspected theft, and described the suspect.
A police dispatcher relayed this information to Alaska State Trooper Michael Dekreon, who was in the area of the store. Almost as soon as the dispatch was completed, Dekreon spotted a young man on foot who matched the description given in *454 the dispatch. Dekreon asked the man to enter his patrol car. Once inside the car, the young man identified himself as G.B. Dekreon recognized the name in connection with a trespass into another business establishment several weeks earlier.
Dekreon proceeded to conduct a patdown search for weapons. In the course of the patdown, he observed a cash register tape on G.B.'s person. When asked about the tape, G.B. made incriminating statements that eventually led Dekreon to more than $800 in cash that G.B. had stolen from the video rental store and hidden nearby.
A delinquency petition was eventually filed against G.B., alleging conduct amounting to theft in the second degree. G.B. moved to suppress all evidence resulting from his stop by Trooper Dekreon. He contended that the stop violated the standard established for investigative stops by Coleman v. State, 553 P.2d 40 (Alaska 1976). G.B. argued that, in stopping him, Dekreon had reasonable suspicion to believe only that a minor theft had occurred. According to G.B., Dekreon's suspicion of a minor theft did not justify an investigative stop, because Coleman held investigative stops to be permissible only in "cases where the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred... ." Coleman, 553 P.2d at 46.
Following an evidentiary hearing, Judge Rowland granted G.B.'s suppression motion. The judge found, as a factual matter, that the information reported to Dekreon gave rise only to a reasonable suspicion that shoplifting or some other minor theft from a commercial business had been committed. The judge concluded that such a theft was insufficient to constitute serious harm to property, as contemplated by Coleman. Although Judge Rowland emphasized that Dekreon's response to the situation had been reasonable and appropriate under the circumstances, he felt constrained to rule that the investigative stop was impermissible under the Coleman standard.
In its petition for review, the state does not seriously contest the superior court's factual findings. Rather, the state urges us to adopt a broader view of the Coleman standard than that adopted below. In response, G.B. contends that the superior court properly construed and applied the Coleman standard. We are thus called upon to decide whether Coleman's requirement of "serious harm to persons or property," precludes a police officer who is responding to a report of a recently committed minor theft from conducting an investigative stop in the immediate vicinity of the crime scene.
Our decision must be guided, at the outset, by recognition of the concern that prompted the Coleman rule. Coleman's requirement that a police officer have "a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred" derives from Justice Brennan's dissenting opinion in Adams v. Williams, 407 U.S. 143, 153, 92 S.Ct. 1921, 1926, 32 L.Ed.2d 612 (1972). See Coleman, 553 P.2d at 45-46 n. 17. Adopting Justice Brennan's view in Adams, the Coleman court noted, "that the doctrine of stop and frisk ... should not be extended beyond situations requiring immediate police response to protect the public in serious cases where there is likelihood of imminent danger about to occur or where serious harm has recently been perpetrated to persons or property." Coleman, 553 P.2d at 46 n. 17.
Justice Brennan's primary concern in Adams, however, was with potential abuses in cases involving possessory crimes. In such cases, Justice Brennan perceived a high risk that stops based on something less than probable cause might simply be used as a pretext to conduct searches for evidence. Justice Brennan perceived a danger in such cases that the reasonable suspicion requirement, unless restricted, would "[open] the sluicegates for serious and unintended erosion of the protection of the Fourth Amendment." Adams, 407 U.S. at 153, 92 S.Ct. at 1927.
Coleman's requirement of imminent public danger or recently committed serious *455 harm to persons or property has remained intact since it was originally adopted. Applying the Coleman rule, the Alaska Supreme Court and this court have uniformly held that various property and drug-related felonies qualify as offenses involving serious harm to persons or property. See, e.g., Ozenna v. State, 619 P.2d 477 (Alaska 1980); Free v. State, 614 P.2d 1374 (Alaska 1980); Pooley v. State, 705 P.2d 1293 (Alaska App. 1985); and Hubert v. State, 638 P.2d 677 (Alaska App. 1981). We have also held that misdemeanor offenses such as driving while intoxicated and driving while license suspended are sufficiently serious to pose an imminent danger to public safety. See, e.g., Ebona v. State, 577 P.2d 698 (Alaska 1978); Smith v. State, 756 P.2d 913 (Alaska App. 1988).
When no reasonable suspicion existed to believe that any particular crime had been committed or that imminent public danger existed, this court has found the Coleman rule to be violated. See Metzker v. State, 658 P.2d 147 (Alaska App. 1983). We know of no case, however, in which an investigative stop has been invalidated solely because the stop did not relate to a crime posing an imminent danger to public safety or causing serious harm to persons or property.
This court's decision in Brown v. State, 684 P.2d 874 (Alaska App. 1984), contains language suggesting that minor cases of theft would not meet the serious harm requirement. In Brown, we found that the defendant's possession of a television set under circumstances suggesting that the set might be stolen gave rise to a reasonable suspicion of burglary. In so doing, we contrasted burglary with minor theft, implying that less serious classes of property offenses might not be covered by Coleman:
Televisions do not lend themselves to shoplifting or other casual theft. A police officer could reasonably believe that any stolen television was taken during a burglary. We therefore conclude that [Officer] Stevens had a reasonable suspicion that Brown had engaged in recent criminal conduct involving serious danger to property at the time the seizure took place.
Brown v. State, 684 P.2d at 879.
In the present case, the superior court relied on this passage from Brown to conclude that Trooper Dekreon did not have the authority to stop G.B., even though the trooper had a reasonable suspicion that G.B. had recently committed a minor theft. On review to this court, G.B. likewise emphasizes that at the time of the stop the case apparently involved nothing more than a "shoplifting or other casual theft." Brown v. State, 684 P.2d at 879.
We find G.B.'s reading of Brown to be unduly literal, however, and his interpretation of the Coleman standard too rigid. Brown does support the conclusion that, in some situations involving minor thefts, Coleman's requirement of serious harm to persons or property may not be satisfied. That is not to say that the Coleman standard categorically precludes all investigative stops based on reasonable suspicion of minor theft.
The determination of the seriousness of harm to persons or property in any given case is inherently relative. What constitutes a trifling inconvenience to some may seem a major imposition to others. From one perspective, the line between misdemeanor and felony offenses may seem a sensible distinction between serious and nonserious harm; from another, the fact that the legislature has chosen to characterize certain conduct as criminal, subjecting offenders to incarceration, would require that the harm resulting from all such criminal conduct be deemed serious rather than inconsequential.
In our view, Coleman addresses the problem of differentiating serious from nonserious harm by espousing a flexible approach based on practical necessity, rather than a rigid standard of categorical exclusion. Coleman requires a determination of the issue based on the circumstances in each case. While the theoretical seriousness of the crime for which reasonable suspicion exists is a significant factor in each case, it is not in itself determinative.
*456 Coleman speaks in terms of imminent threats to public safety and recently committed serious harm. In so doing, Coleman recognizes that the extent of danger threatened by a potential crime or the seriousness of harm resulting from a crime that has already been committed cannot be evaluated in the abstract. Rather, a threat to public safety must be considered in conjunction with the imminence of that threat. A given threat to public safety might not justify an investigative stop when the danger threatened is not immediate and when circumstances would permit additional efforts to obtain probable cause. As the danger becomes more immediate and the opportunity for additional investigation diminishes, the same threat might justify a stop based on reasonable suspicion alone. Likewise, once a crime has been committed, the seriousness of the resulting harm must be considered in connection with the recency of the crime. The less recent the crime, the more serious the offense must be before an investigative stop based on reasonable suspicion alone will be justified.
These factors must in turn be balanced against the strength of an officer's reasonable suspicion and the actual intrusiveness of the investigative stop. The seriousness of harm necessary to support an investigative stop will thus increase or diminish in any given case depending on the totality of the circumstances surrounding the stop itself. A minimally intrusive stop based on solid information indicating that a crime is actually in progress or has just been completed may be justified under Coleman even when the crime itself is not a felony and involves harm that in other contexts might not seem particularly serious.
We emphasize that the Coleman rule is ultimately rooted in common sense and practicality. In each case, compliance with Coleman's requirement of recently committed serious harm must be evaluated with a view toward the fundamental concern of the Coleman court: the risk that an investigative stop based on mere suspicion may be used as a pretext to conduct a search for evidence. As indicated in Coleman, the fundamental inquiry in each case is whether "a prompt investigation [was] required ... as a matter of practical necessity." Coleman v. State, 553 P.2d at 46 (quoting Goss v. State, 390 P.2d 220, 224 (Alaska), cert. denied, 379 U.S. 859, 85 S.Ct. 118, 13 L.Ed.2d 62 (1964)).
In the present case, Trooper Dekreon received word from his dispatcher that a theft had been committed at a video store. The offense occurred literally moments before the dispatch. The information contained in the dispatch was reliable, pertained to a specific crime, and included a description of the suspect.
Dekreon was in the vicinity of the store when he received the call. He observed G.B. almost immediately thereafter. G.B. matched the description, was still in close proximity to the crime scene, and appeared to be walking away.
While Dekreon had no specific reason to believe the reported crime involved anything more than a shoplifting or misdemeanor theft, neither had he received any specific information ruling out the possibility of a more serious theft.[1] Dekreon's *457 response was minimally intrusive. He initially asked G.B. to be seated in his patrol car and to identify himself. Only after Dekreon recognized G.B. in connection with previously reported incidents did he conduct a patdown search for weapons. In the course of the patdown, Dekreon observed a cash register tape in plain view.
Neither the nature of the reported crime nor the measured and minimally intrusive manner of Dekreon's response suggests any possibility of a pretextual search for evidence. As expressly recognized by Judge Rowland, Dekreon's decision to make immediate contact with G.B. was plainly reasonable.
Under the totality of the circumstances, we find this to be a case in which Dekreon "had the right and the duty to make a prompt investigation which required [him] as a matter of practical necessity to stop" G.B. See Coleman, 553 P.2d at 46 (quoting Goss v. State, 390 P.2d at 224). Accordingly, although we accept the superior court's finding that Dekreon had reason to suspect only a minor theft, we conclude that the suspected harm was sufficient to justify an investigative stop.
The superior court's order suppressing the evidence resulting from Dekreon's stop of G.B. is REVERSED.
NOTES
[1] In this regard, our recent holding in Smith v. State, 756 P.2d 913 (Alaska App. 1988), is relevant. In Smith, we considered whether Coleman's imminent danger requirement was met where a police officer had reason to suspect a person of driving with a suspended license but no particular indication that the person's driving was actually erratic or dangerous. The appellant argued that, since licenses are often suspended for reasons unrelated to a driver's ability to drive safely, no reasonable suspicion of imminent public danger could exist without case-specific circumstances indicating dangerous driving. We rejected this argument, stating: Under the [Coleman] standard, an officer who performs a traffic stop need not be certain that imminent public danger exists or that a crime involving serious harm to persons or property had recently been committed. Rather, the [Coleman] standard requires only a reasonable suspicion. Where, as here, there are grounds to believe that the license of a driver has been suspended, and there is no information to rule out the possibility that the suspension was directly related to the driver's actual inability to drive safely, there is, at a minimum, reasonable suspicion to believe that imminent public danger exists. In our view, when there is a reasonable suspicion that a person whose license has been suspended is driving, the situation is one "requiring immediate police response to protect the public... ." Coleman, 553 P.2d at 45-46 n. 17. Smith, 756 P.2d at 916.