**Donald R. HAYES, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–2420, A–2560.**

Court of Appeals of Alaska.

Jan. 5, 1990.

John B. Salemi, Public Defender, Anchorage, for appellant.

Valerie A. VanBrocklin, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

COATS, Judge.

Donald R. Hayes was convicted, based upon his plea of no contest, of misconduct involving a controlled substance in the fourth degree, a class C felony. AS 11.71.-040(a)(3)(A). This offense involved the possession of a small quantity of LSD. Hayes had previously been convicted of the sale of a hallucinogenic, depressant, or stimulant drug under former AS 17.12.010 and therefore was subject to sentencing as a second felony offender. As a second felony offender convicted of a class C felony, Hayes was subject to a two-year presumptive sentence. Judge Carlson found one aggravating factor: that "a prior felony conviction considered for the purpose of invoking the presumptive terms of this chapter was of a more serious class of offense than the present offense." AS 12.55.155(c)(7). Judge Carlson also found that Hayes had established a mitigating factor: that "the defendant is convicted of an offense specified in AS 11.71. and the offense involved small quantities of a controlled substance." AS 12.55.155(d)(14). Judge Carlson imposed an aggravated presumptive sentence of three years of imprisonment. Judge Carlson also revoked Hayes' probation on his previous felony conviction, imposing two years of imprisonment, consecutive to the three-year sentence. Therefore, Hayes faces a composite sentence of five years of imprisonment. Hayes appeals his conviction and sentence. We affirm Hayes' conviction but reverse his sentence.

On May 31, 1987, at approximately 12:55 a.m., Anchorage Police Officer Paul Morino was sent by a police dispatcher to a house on Specking and DeArmoun Roads to respond to a report of a loud party. When Morino arrived, he found a party with 150–200 people in attendance. Morino and his partner began to disperse the party. As people were leaving, Donald Hayes approached Morino to state that he was encouraging people to leave the party. When he saw Hayes, Morino recalled that within the preceding two months, he or another officer had run a check which revealed that there were outstanding warrants for Hayes' arrest. Morino also remembered seeing a picture of Hayes on the police department bulletin board with a note regarding the outstanding warrants.

Morino said to Hayes, "How's it going, Jim." Hayes asked Morino how he knew his name, and Morino responded that he remembered Hayes because he had arrested him on a previous occasion. That arrest occurred in 1985 and was related to a vehicle accident. The incident stood out in Morino's mind because Hayes had behaved violently during the arrest. Morino also told Hayes he thought there might be some outstanding warrants for his arrest. Hayes responded that his name was not Hayes, but Daniels, which Morino knew was untrue.

Using his portable radio, Morino called to verify the outstanding warrants with the dispatcher. While Morino was talking to the dispatcher, Hayes said that he felt he was being harassed and that he wanted to leave. Morino had Officer Maxwell join him to ensure Hayes did not leave until he received verification of the warrants. When Maxwell arrived, Hayes took several steps back. As Hayes moved backward, a piece of white paper fell from his midsection. Hayes covered the paper with his foot and would not move off it.

Less than two minutes after Hayes initially contacted Morino, the dispatcher confirmed there were two outstanding warrants for James Hayes, a.k.a. Donald Hayes. Morino moved to arrest Hayes. He directed Hayes to step off the paper, which Hayes refused to do. He backed Hayes off the paper, handcuffed him, and then recovered the paper. Testing showed the paper to contain blotter LSD.

Hayes moved to suppress the LSD. Judge Carlson denied the motion, finding that the police contact with Hayes preceding his arrest was reasonable. Hayes entered his plea of no contest, reserving his right to appeal the denial of his motion to suppress, pursuant to *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

Hayes argues that under the supreme court's decision in *Coleman v. State*, 553 P.2d 40 (Alaska 1976), Morino did not have the authority to conduct an investigative

stop to verify his suspicion that a warrant had been issued for Hayes' arrest. *Coleman* held that an investigatory stop is permissible only "where the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred...." *Coleman*, 553 P.2d at 46; *see, e.g., Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968).

Hayes contends that Morino's recollection that there were warrants for Hayes' arrest was too insubstantial to constitute reasonable suspicion. Hayes also claims that the second prong of the *Coleman* standard was not met because there was no evidence that public danger existed or that serious harm to persons or property had recently occurred. Consequently, Hayes concludes that because there was no authority to conduct an investigatory stop, the seizure of the LSD was not proper and that the evidence should have been suppressed.

■ A person has been "seized" within the meaning of the fourth amendment only if, in view of the objective facts surrounding the incident, "a reasonable person would have believed that he was not free to leave." *Waring v. State*, 670 P.2d 357, 363–64 (Alaska 1983), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (footnote omitted) (plurality opinion). A "reasonable" person refers to an individual who is innocent of any crime. The test is "whether a reasonably prudent person who is innocent of any crime would treat the police officer's actions as indicating an intent to restrain or confine the person, considering all the circumstances." *Romo v. Anchorage*, 697 P.2d 1065, 1068 (Alaska App.1985).

■ In the present case, there does not seem to be any dispute that the officers' two-minute detention of Hayes constituted a fourth amendment seizure. When Morino went to verify the outstanding warrants, Hayes stated that he felt harassed and wished to go. Morino's partner, Maxwell, kept Hayes from leaving until Morino received verification of the warrants. Under these circumstances, a reasonable person in Hayes' position would have concluded that he was not free to leave. Hayes was, therefore, seized for purposes of the investigation.

■ The next question which we must answer is whether the police had sufficient information to justify detaining Hayes for the brief period of time necessary to confirm whether the warrants were still in existence. Whether reasonable suspicion exists is a mixed question of fact and law. We will overturn the trial court's factual findings only if they are clearly erroneous. Whether the circumstances of a case justify a finding of reasonable suspicion is an issue which is subject to *de novo* review. *LeMense v. State*, 754 P.2d 268, 272–73 (Alaska App.1988). In the present case, Judge Carlson found the two month period of time which elapsed between when Morino learned that there were outstanding warrants for Hayes and the time of the detention of Hayes was not so long that it was unreasonable for Morino to conclude that the warrants were still outstanding. The court pointed out that the police generally do not have time to serve traffic warrants and those warrants usually get served when a person is stopped for another traffic offense. Judge Carlson also thought that Hayes' use of a false name strengthened the officer's conclusion that the warrants were probably outstanding. Under the totality of the circumstances, we conclude that Morino had reasonable grounds to believe there were outstanding warrants for Hayes.

■ Hayes next argues that Morino's actions were unjustified because, under *Coleman*, investigatory stops are permissible only in "cases where the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred...." *Coleman*, 553 P.2d at 46. Hayes contends that stopping a person to serve traffic warrants does not meet the *Coleman* standards.

Hayes points out that Morino had no facts which would have permitted him to conclude that Hayes was engaged in dan-

gerous behavior or that the warrants concerned dangerous offenses. This court addressed the distinction between serious and nonserious offenses under *Coleman* in *State v. G.B.*, 769 P.2d 452 (Alaska App. 1989). The court cautioned against an overly literal and rigid interpretation of the *Coleman* standard and applied a test which would take into account the particular circumstances of a given case:

> In our view, *Coleman* addresses the problem of differentiating serious from nonserious harm by espousing a flexible approach based on practical necessity, rather than a rigid standard of categorical exclusion. *Coleman* requires a determination of the issue based on the circumstances in each case. While the theoretical seriousness of the crime for which reasonable suspicion exists is a significant factor in each case, it is not in itself determinative.
>
> .    .    .    .    .
>
> [O]nce a crime has been committed, the seriousness of the resulting harm must be considered in connection with the recency of the crime. The less recent the crime, the more serious the offense must be before an investigative stop based on reasonable suspicion alone will be justified.
>
> These factors must in turn be balanced against the strength of an officer's reasonable suspicion and the actual intrusiveness of the investigative stop. The seriousness of harm necessary to support an investigative stop will thus increase or diminish in any given case depending on the totality of the circumstances surrounding the stop itself. A minimally intrusive stop based on solid information indicating that a crime is actually in progress or has just been completed may be justified under *Coleman* even when the crime itself is not a felony and involves harm that in other contexts might not seem particularly serious.

*G.B.*, 769 P.2d at 455–56.

Applying the balancing test set forth in *G.B.*, we conclude that the investigative stop in this case meets the *Coleman* standards. Morino had every reason to believe that there were outstanding warrants for Hayes, and he was certain of Hayes' identity. In contrast, the amount of the intrusion was small. Hayes was delayed for approximately two minutes while the officer checked on whether the warrants were still outstanding. We conclude Judge Carlson did not err in refusing to grant Hayes' motion to suppress.

Hayes next contends that his sentence, totalling five years of imprisonment, is excessive. In 1981, Hayes was convicted of sale of a hallucinogenic, depressant, or stimulant drug under former AS 17.12.010. He sold ten hits of LSD for $50. If Hayes had committed this offense under the current criminal code, it would have been a class B felony. AS 11.71.030(a)(1). At the time of this previous conviction, Hayes had been adjudicated a delinquent after admitting to a petition alleging grand larceny. He also had two misdemeanor offenses for assault and battery and trespass. Judge Carlson originally sentenced Hayes on this offense to a suspended imposition of sentence, requiring Hayes to serve one year of imprisonment as a condition of probation. Another condition of Hayes' probation was that he receive drug treatment by complying with the Treatment Alternatives to Street Crime (T.A.S.C.) program. Hayes was released from confinement on March 9, 1983. Shortly thereafter, Hayes was discharged from the T.A.S.C. program for noncompliance. In 1983, Hayes was convicted of two driving while intoxicated charges and one conviction for evading an officer. Based upon Hayes' numerous violations of his probation, Judge Carlson revoked Hayes' probation and sentenced him to five years with two years suspended. Hayes served sixteen months of imprisonment and was released on May 26, 1985. In August 1985, Hayes was again convicted of driving while intoxicated and making a false report. In April 1986, he was convicted of eluding an officer. In October 1986, he was convicted of driving while his license was suspended. Hayes continued to fail in drug treatment programs.

Hayes clearly has a serious problem with substance abuse. At the time of sen-

tencing in the instant cases, he had been given numerous opportunities to address his substance abuse problem and had consistently failed. Based upon this background, Judge Carlson could properly conclude that Hayes had poor prospects for rehabilitation. He could also properly conclude that Hayes' substance abuse problems led to serious criminal violations, such as driving while intoxicated, which place everyone in the community at risk.

In spite of this dismal record, Hayes is entitled to be sentenced based upon the offenses of which he was convicted. *Lawrence v. State*, 764 P.2d 318, 320–21 (Alaska App.1988). Hayes' earlier offense, sale of a hallucinogenic, depressant, or stimulant drug, was essentially the equivalent of a class B felony. Normally, a first offender convicted of a class B felony should receive a sentence more favorable than the presumptive sentence for a second felony offender. *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981). The presumptive sentence for a second felony offender convicted of a class B felony is four years. AS 12.55.125(d)(1). Hayes' original crime was not an aggravated offense: he sold ten hits of L.S.D. for $50. *See* AS 12.55.155(d)(14) (establishing the mitigating factor that "the defendant is convicted of an offense specified in AS 11.71. and the offense involved small quantities of a controlled substance"). In addition, Hayes was a very young offender at the time of this offense. This court has decided many cases involving sentencing of first offenders for small sales of drugs in class B felonies. Most of those cases involve the sale of cocaine. Under our prior sentencing decisions, we have held that for small sales of cocaine the maximum sentence should not exceed two years of unsuspended incarceration. *See Smith v. State*, 767 P.2d 211, 214–15 (Alaska App.1989); *Bush v. State*, 678 P.2d 423, 426 n. 1 (Alaska App.1984).

Hayes' current offense is a class C felony. The presumptive sentence for a second felony offender convicted of a class C felony is two years. AS 12.55.125(e)(1). In sentencing Hayes, Judge Carlson found one aggravating factor, that "a prior felony conviction considered for the purpose of invoking the presumptive terms of this chapter was of a more serious class of offense than the present offense." AS 12.55.155(c)(7). The state points out that Judge Carlson could have found an additional aggravating factor, that "the defendant was on ... parole or probation for another felony charge or conviction." AS 12.55.155(c)(20). Judge Carlson found one mitigating factor, that "the defendant is convicted of an offense specified in AS 11.71 and the offense involved small quantities of a controlled substance." AS 12.55.155(d)(14). Judge Carlson imposed a sentence of three years of imprisonment. Three years is the presumptive sentence for a third felony offender. AS 12.55.125(e)(2).

Given the aggravating factors and Hayes' prior history of failure on probation, Judge Carlson was entitled to impose a sentence equal to the presumptive sentence for a third felony offender on Hayes' second offense. However, it is difficult to justify a sentence greater than three years for this second offense. Therefore, the sentence which Judge Carlson imposed for that second offense was at a maximum level.

■ However, in imposing two years, consecutive, from Hayes' previous offense, Judge Carlson had imposed a total of five years of imprisonment on Hayes' first felony conviction. In *Crouse v. State*, 736 P.2d 783, 786 (Alaska App.1987) (citation omitted), we stated: "We are frequently required to review composite sentences in which part of the sentence is suspended. Both the suspended portion of the sentence and the portion actually imposed must be considered in determining whether a sentence is excessive, but primary attention is given to the nonsuspended time."

In effect, we postpone primary attention to the suspended time of a sentence until it is actually imposed. In reviewing Hayes' sentence on his first felony offense, we do not believe that a sentence of five years of imprisonment for Hayes' first offense can be sustained. In *Smith v. State*, 767 P.2d

at 215 (citations omitted), we indicated that in class B felonies involving the sale of cocaine, "sentences of five years or more for distribution of cocaine have been reserved for offenders whose convictions were for selling large quantities and who either had prior felony convictions or had otherwise demonstrated an unusual degree of persistence as adult felony offenders." Even with Hayes' consistent failures on probation and his subsequent offense, we do not believe that he can properly be classified with offenders who committed substantially more serious offenses. Under no circumstances do we believe that Hayes' sentence on this first offense should have exceeded a total of four years of imprisonment, which is equivalent to the presumptive sentence for a second felony offender convicted of a class B felony. Since Judge Carlson had already required Hayes to serve three years of imprisonment on this first offense, it follows that Judge Carlson could revoke Hayes' probation for a maximum of one additional year.

We accordingly conclude that the composite sentence of five years which Judge Carlson imposed in this case is clearly mistaken. We conclude that, at most, Judge Carlson could have imposed a sentence of one year in revoking Hayes' probation on his first felony offense. Thus, we conclude that Hayes' composite sentence should not have exceeded four years of imprisonment.

The conviction is AFFIRMED. The sentence is REVERSED and REMANDED.