**Jack D. GUTIERRES, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Kerry D. TAYLOR, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1047.**

Court of Appeals of Alaska.

June 1, 1990.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public

Defender, Anchorage, for appellant Gutierres.

Charles Easaw, Asst. Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for appellant Taylor.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Bailey, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

Jack D. Gutierres pled *nolo contendere* and was convicted of one count of burglary in the first degree, a class B felony, in violation of AS 11.46.300(a)(1) and one count of theft in the second degree, a class C felony, in violation of AS 11.46.130(a)(2). Kerry D. Taylor, pled *nolo contendere* and was convicted of one count of theft in the second degree, a class C felony, in violation of AS 11.46.130(a)(2). With the consent of the trial court and the prosecution, Gutierres and Taylor conditioned their plea on the right to appeal the denial of their motions to suppress evidence based on their contention that they were the victims of an improper investigatory stop. We therefore have jurisdiction over this appeal. *See Oveson v. Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978); *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

Gutierres and Taylor argue that the trial court erred in finding that Fairbanks Police Officer Larry G. Layman had reasonable suspicion justifying the investigatory stop of Gutierres and Taylor that led to the evidence upon which their convictions were based. We affirm.

On September 7, 1988, Officer Layman, an eighteen-year veteran of the Fairbanks Police Department, was on routine patrol in the Hamilton Acres area of Fairbanks. Hamilton Acres is comprised mostly of residential, single-family and duplex homes. At approximately 1:25 a.m., Officer Layman observed a vehicle with its lights on travelling down an alley. Based on his experience, Officer Layman knew that thieves routinely cruised alleys but recognized that local residents would occasionally use the alleys to reach their homes. Officer Layman pulled his car into the alley facing the direction of the vehicle. He had not activated his warning lights, but did have his headlights on.

As Officer Layman entered the alley, he saw no moving vehicles, but observed a dark green Chevy Impala to his left, legally parked on the side of the alley. Officer Layman observed that the car's headlights were off and the passenger door was open. He also observed a person in the driver's seat and thought he saw a second individual quickly run up to the car and jump into the front passenger seat. At this point, the Impala immediately began to back down the alley with its headlights still off. Officer Layman activated his warning lights and followed the departing vehicle. When the vehicle did not stop, Officer Layman sounded his siren and continued in pursuit of the Impala for approximately one block down the alley before it eventually stopped. He stopped his patrol car about one car length from the Impala. As he left the police car, he saw the driver of the other vehicle get out of the Impala. He asked the driver to place his driver's license on the hood of the patrol car. The driver, later identified as Taylor, stated he had no license but had a citation from the airport police with his name and birthdate on it. Taylor identified himself as Mikel Ward and the citation was issued to a Mikel Ward. Taylor furnished a birthdate and social security number. Officer Layman conducted a brief pat-down search of Taylor and placed him in the back of the patrol car where Taylor was locked in and unable to leave. Officer Layman then ran the name Mikel Ward with the identifying information furnished by Taylor through the Alaska public information system computer (APSIN). Within a few seconds he learned that no one by that name had a current Alaska driver's license and inferred that Taylor was lying to him about his name.

Officer Layman then walked over to the Impala and questioned the passenger, later identified as Gutierres. Gutierres also said

the driver's name was Mikel Ward. Officer Layman removed Gutierres from the car, conducted a pat-down search, and found a hunting knife with a five-inch blade in the right rear pocket of Gutierres' coat. Gutierres also gave a false name and birthdate when asked to identify himself. Officer Layman noted that the tags were expired on the Impala and ran the plates through the APSIN system. The vehicle was registered to a different owner. Eventually, Gutierres and Taylor disclosed their true names to Officer Layman. He then learned that they both had outstanding warrants and they were arrested on these warrants. When the police subsequently searched the area where the Impala was parked, they found a cache of stolen property.

## DISCUSSION

■ Where a police officer has specific and articulable facts which lead him reasonably to conclude, in light of his experience, that criminal activity may be afoot and that a person with whom he is dealing may be armed and dangerous, he may stop that individual for purposes of investigation and conduct a carefully limited search of the outer clothing of the person for his own protection. *Terry v. Ohio*, 392 U.S. 1, 21, 30–31, 88 S.Ct. 1868, 1879, 1884–1885, 20 L.Ed.2d 889 (1968). In Alaska, such a stop is only justified where the officer has reasonable suspicion that imminent public danger exists or that serious harm to persons or property has recently occurred. *See, e.g., Coleman v. State*, 553 P.2d 40, 46 (Alaska 1976); *Allen v. State*, 781 P.2d 992, 993 (Alaska App.1989); *State v. G.B.*, 769 P.2d 452, 455–56 (Alaska App.1989). A reasonable suspicion is one that has some factual foundation in the totality of the circumstances observed by the officer in light of the officer's knowledge. *See United States v. Sokolow*, —— U.S. ——, 109 S.Ct.

1581, 1585, 104 L.Ed.2d 1 (1989). The fundamental inquiry is whether "a prompt investigation [was] required ... as a matter of practical necessity." *G.B.*, 769 P.2d at 456 (quoting *Coleman*, 553 P.2d at 46).

■ We are satisfied that Officer Layman had sufficient reasonable suspicion to warrant his stopping Gutierres and Taylor in order to investigate a possible burglary. The residential nature of the area, the lateness of the hour, Gutierres' action in jumping in the car as Officer Layman approached and Taylor's action in swiftly backing the vehicle down the alley were sufficiently suspicious circumstances to warrant Officer Layman in stopping the car and attempting to identify its occupants.[1] When the occupants supplied false information regarding their identities, Officer Layman was justified in prolonging the stop in order to find out with whom he was dealing.

Gutierres and Taylor argue that Officer Layman could not stop them unless he had some knowledge that a burglary or theft had already occurred. This is a misunderstanding of the rule. *Terry* involved a stop aimed at preventing crime not investigating a past crime. It is not unreasonable for police officers to investigate before they have specific knowledge that a crime has been committed. *See* 3 W. LaFave, *Search and Seizure* § 9.2(a), at 348–53 (2d ed. 1987).

Gutierres and Taylor argue that their conduct as observed by Layman was as consistent with innocence as it was with guilt. This may be so, but an officer is not required to have probable cause to make an investigatory stop. A reasonable suspicion will suffice. As the Ninth Circuit pointed out in *United States v. Holland*, 510 F.2d 453, 455 (9th Cir.1975), *cert. denied*, 422 U.S. 1010, 95 S.Ct. 2634, 45 L.Ed.2d 674 (1975) (emphasis in original):

1. Our recent decision in *Ozhuwan v. State*, 786 P.2d 918 (Alaska App.1990), is distinguishable. There, we held that an officer could not "stop" a vehicle legally parked, late at night, in a parking lot at an isolated campground open to the public, on the unsupported conjecture that the occupants in the car might have been minors consuming alcohol. In *Ozhuwan*, there was nothing to suggest that the occupants of the vehicle might be involved in criminal behavior. In contrast, the facts in this case support an inference that the occupants might be involved in the burglary of a nearby residence.

Clearly, the officers were not required to rule out all possibility of innocent behavior before initiating a brief stop and request for identification. The test is founded suspicion, not probable cause. Even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, police officers must be permitted to act *before* their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer." *Adams v. Williams*, 407 U.S. 143, 146 [92 S.Ct. 1921, 1923, 32 L.Ed.2d 612] (1972).

■ Gutierres next argues that even if Officer Layman had reasonable cause to detain and question him, he did not have a basis for frisking him for weapons. Gutierres and Taylor point out that nothing in their behavior was threatening and that Officer Layman did not observe any indication that they were armed. At most, he indicated that he wanted to identify them and, if they were properly identified, he would have released them.

The right to seize temporarily is not necessarily the right to search. *See Howard v. State*, 664 P.2d 603, 609–10 (Alaska App. 1983). Nevertheless, under the circumstances of this case, we believe that a brief pat-down of Gutierres for weapons was reasonable. *See Terry*, 392 U.S. at 30–31, 88 S.Ct. at 1884–1885. Here, Officer Layman reasonably believed that Gutierres and Taylor might be involved in a burglary or a serious theft. While burglary is not *per se* a crime of violence, it is a serious crime and those convicted of burglary are subject to substantial sanctions. Officer Layman might well fear that someone suspected of burglary would carry a weapon and resort to violence. *See Brown v. State*, 684 P.2d 874, 879 (Alaska App.1984). Given the lateness of the hour, the fact that no one else was around, and that Layman was alone with two suspects, it was not unreasonable for him to subject Gutierres to a brief frisk for weapons. *See, e.g.,* LaFave, *supra,*

§ 9.4(b), at 516–21 (concluding that federal courts have recognized an automatic right to frisk where a suspect is stopped upon suspicion that he has committed, or was about to commit a serious offense such as burglary).

The judgment of the superior court is AFFIRMED.