STATE of Missouri, Plaintiff–Appellant,

v.

James E. HUTCHINSON,
Defendant–Respondent.

No. 16952.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 20, 1990.

defendant by Jack McMullin, a member of the Missouri Highway Patrol.

The State's sole point on appeal is that the trial court erred in suppressing the evidence seized by the officer, "pursuant to the arrest of the defendant, which was precipitated by a lawful search for personal safety during a traffic stop because the trooper's actions fell within those categories of searches which fall outside constitutional requirements for a search warrant." "The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case." *Sibron v. State of New York*, 392 U.S. 40, 59, 88 S.Ct. 1889, 1901, 20 L.Ed.2d 917, 932 (1968); *State v. Cotterman*, 544 S.W.2d 322, 323–24 (Mo.App.1976). The "concrete factual context" is determined from the testimony of Officer McMullin, the sole witness, and the evidence can only be stated as it was presented. *State v. Robinson*, 789 S.W.2d 876, 880 (Mo.App. 1990).

Officer McMullin was on a motel parking lot in Springfield, having completed an unrelated investigation, when he saw a black Lincoln motor vehicle start to pull onto the motel parking lot. The officer was in uniform. The Lincoln automobile suddenly "veered off" and "took off in another direction, towards Kearney Street, through other parking lots." The officer followed the Lincoln motor vehicle through the parking lots to where it exited onto Kearney Street and went east on Kearney. At that point, other than veering off the parking lot, the officer noticed nothing unusual in the movement of the car and did not know who was driving the vehicle. After the Lincoln started east on Kearney and approached a traffic light, the light changed and "the car nosed down severely ... in an abrupt halt." After the traffic light changed to green, the Lincoln continued

Thomas E. Mountjoy, Pros. Atty., Pat J. Merriman, Asst. Pros. Atty., Springfield, for plaintiff-appellant.

Dee Wampler, Wampler, Wampler & Catt, Springfield, for defendant-respondent.

SHRUM, Judge.

The State appeals[1] a trial court's order sustaining defendant's motion to suppress evidence. The order suppressed "all objects seized at the scene of the arrest"[2] of

---

1. Interlocutory appeal of a trial court's order is authorized by § 547.200.1(2), RSMo 1986.

2. The transcript reveals the items seized included: (a) a pistol from a jacket in the back seat of the car; (b) a lip balm container (like a Chap Stick) from defendant's right shirt pocket containing a white powder which, on analysis, was methamphetamine; and (c) a glass tube with a white powder residue taken from the automobile in a subsequent inventory search of the vehicle.

east. The officer noted the car was moving what he considered "slow and it would drift, the vehicle's motion would drift towards the center line and would drift back over toward the right shoulder. It did this several times." After following the Lincoln 2–3 minutes, the officer stopped the vehicle, without any difficulty, with his emergency equipment. The officer said he stopped the vehicle to check the driver for the possibility of being intoxicated. The Lincoln pulled onto a private parking lot.

The officer approached the Lincoln and requested a driver's license and vehicle registration. The driver was the defendant. He was the sole occupant of the vehicle. The officer was familiar with, and knew, the defendant. The officer explained why he had stopped the defendant. The officer saw nothing unusual about the interior of the car at that time. Defendant was drinking a Taco Bell Coca–Cola and the officer saw no intoxicants in the car. Defendant produced a valid driver's license and a registration for the vehicle. The officer asked defendant to get out, "to get a closer view of him and to observe his reactions." Defendant complied with the request and then stood outside the car beside the officer. Nothing unusual was noted about the appearance of defendant's eyes, his speech, or his walk. The officer concluded defendant was not intoxicated.

As defendant exited his car, the door was left open. The officer looked in and saw a pair of handcuffs lying on the floor. Defendant was not under arrest at that time. The officer had no particular arrest in mind. Possession of handcuffs was not unlawful, defendant's license and the vehicle registration had been produced, and defendant was not intoxicated. As defendant stood outside his vehicle beside Officer McMullin, the officer saw a jacket lying in the back seat, directly behind the driver's seat, and he reached in defendant's vehicle and picked it up. The Lincoln was a two-door vehicle. The front seat was a full seat (as opposed to a console-type seat). This meant that a person would have to reach up and over the front seat to have access to the back seat and the jacket which was lying on the back seat. When

asked on direct examination why he picked up the coat, the officer answered, "Just to check its contents too. I was checking the area near the driver and so forth."

On cross-examination, Officer McMullin was again asked, "Why did you pick the coat up?"; he answered:

A. I was just—well, I don't really know the reason why I did. I was just—like I said, I looked in the floorboards, saw the handcuffs and so forth, making a sweep there, and looked into the back seat and there was a coat and I just reached and picked the coat up.

Q. Okay. You say you were making a sweep. Now, tell me about that. Why were you sweeping the car?

A. Well, I don't know whether my terminology would be correct, but it's more or less a protective sweep because—of that particular area that the driver would have been in.

Q. Right. Protective sweep ensuing what, an arrest of some kind? Was the man under arrest?

A. Not at that particular time, no, sir. Like I said, I had him out and looked into the car.

Q. Well, you were just—you were afraid for your life at that point, is that right?

A. Well, I was double checking to make sure there wasn't any weapons, you know, like under the seat and so forth there near him.

Q. Double checking because you were going to arrest him for something at that point?

A. Not at that particular time. I didn't have any particular arrest in mind at that particular time.

When the officer picked the jacket up, he could tell one side of it was heavy. He felt near the pocket and could feel the outline of what he believed to be a revolver. Reaching into the jacket pocket, the officer found a revolver with live rounds in the chambers. The officer did not see the revolver by looking into the motor vehicle. He had to pick up the coat and reach into the jacket to see the revolver. Officer

McMullin noted that the jacket contained a package of Camel cigarettes which was the same brand defendant was smoking. Defendant told the officer the jacket and gun belonged to "Chico."[3] After finding the gun, Officer McMullin had defendant step to the front of the Lincoln to give him a "patdown" search.[4] The record is less than clear on the question of whether or not defendant was arrested before the "patdown" search of his person. On direct examination, Officer McMullin testified:

Q. Now, prior to the time you patted him down, were you arresting him?

A. Yes, for the weapons charge, yes.

On cross-examination, the officer testified:

Q. ... [Y]ou didn't arrest him for carrying a concealed weapon or possession [of] an illegal weapon of any kind, did you?

A. Yes, sir.

Q. At that time?

A. Okay. Now, when do you mean? At that time? What period are you—

Q. Whenever you saw the weapon, did you say, "Aha, you're placed under arrest for carrying a concealed weapon in violation of Missouri law?"

A. I don't remember if I—I know that there was conversation about the weapon because he told me that it belonged to Chico. He made the comment that the weapon, you know, belonged to Chico.

\* \* \* \* \* \*

Q. He was not arrested for anything until after the Chap Stick tube was found in his right front pocket?

A. I placed the charge on him for the weapon and the narcotics, what I believed to be narcotics at that time.

Q. Okay. You're shaking your head yes when you answered the question, that he was not arrested until after you searched in his right front pocket.

A. The best I remember, yes.

Officer McMullin further testified that after he found the weapon, defendant was not free to go at that point; he intended to

arrest him for the weapons offense whether or not he found anything else inside the vehicle.

As Officer McMullin was performing the "patdown" search of defendant, he "felt an object in his right shirt pocket ... and [he] took it out and it was a lip balm container ... like a ... Chap Stick." The officer took the top off the lip balm container and found it contained a white powder which was later tested to be methamphetamine. When asked about the search of the lip balm container, Officer McMullin's testimony was:

Q. Well, when you saw it [the container] were you looking for drugs?

A. Not particularly. I mean not really. Like I said, I just took it out and opened it and there was powder in it.

Q. Why would you open a Chap Stick type container and look in it?

A. Because there are containers that can conceal other things besides what their intended purpose is.

Q. Okay. The fact is you were looking for evidence at this point, not weapons?

A. Well, I don't guess I was really looking for anything, other than I did check the contents of the Chap Stick at the time.

\* \* \* \* \* \*

Q. ... [Y]ou were just curious and that's why you opened it up, is that right?

A. Yes, based on what I just said earlier.

The container with the powder was seized by the officer. During a later inventory search of the Lincoln, a clear glass tube that had a white powder residue on it was found and seized. Officer McMullin testified that he was familiar with the practice of carrying illicit drugs in containers such as the one seized from defendant. While he was not "particularly" looking for drugs when he opened the container, he looked

---

**3.** The testimony was that the Lincoln motor vehicle was registered to "Chico."

**4.** As of this time, another police officer, Doug Smith, had arrived at the scene.

into the container because he was curious about its contents.

█ When reviewing a trial court's order suppressing evidence, the facts and reasonable inferences arising therefrom are to be considered favorably to the order challenged on appeal. *State v. Blair*, 691 S.W.2d 259, 260 (Mo.banc 1985); *State v. Robinson, supra*, at 880. Evidence and inferences contrary to the order are to be disregarded. *State v. Mantle*, 779 S.W.2d 357, 358 (Mo.App.1989). "Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v. Milliorn*, 794 S.W.2d 181 (Mo.banc 1990). The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const.Amend. IV.

The general principle is that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *State v. Quinn*, 565 S.W.2d 665, 670 (Mo.App.1978). One of the exceptions is that, even in the absence of probable cause for arrest, officers may search the person being interviewed and the immediate vicinity for weapons where the officers have reason to believe their safety is endangered.[5] *Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Sibron v. State of New York, supra*. This has always been a strictly limited right. As stated in *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911:

> The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

A protective search of a person for weapons may be extended to a limited search of the vehicle in which that person is riding. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *State v. Shearin*, 622 S.W.2d 10, 12 (Mo.App.1981).

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible *if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.* (Emphasis added)

*Michigan v. Long*, 463 U.S. at 1049–50, 103 S.Ct. at 3480–81, 77 L.Ed.2d at 1219–20.[6]

---

**5.** Another broad exception to the warrant requirements focuses on automobiles and was recently exhaustively discussed in *State v. Milliorn, supra*. It was pointed out that "[g]enerally, law enforcement personnel may conduct a warrantless search of a vehicle and seize contraband if (1) there is probable cause to believe that the vehicle contains contraband and (2) exigent circumstances necessitate the search."

Such exception does not here apply because there is not a scintilla of evidence that Officer McMullin had reasonable cause to believe that the Lincoln (or the jacket on the back seat of the Lincoln) contained contraband.

**6.** Footnote 14 in *Michigan v. Long* reads, in part: "We stress that our decision does not mean that the police may conduct automobile searches whenever they conduct an investigative stop,

In the case at bar, the State claims that "[i]n determining the necessity for a protective sweep [of the vehicle and jacket], Trooper McMullin took the following factors into consideration: 1) the evasive traffic maneuvers exhibited by the defendant at the motel parking lot; 2) the unusual operation of the vehicle after it left his presence; 3) his observation of a man who was 'known' to him ...; and 4) a pair of handcuffs lying in the subject vehicle." Those are not facts which compel a finding that Officer McMullin could reasonably infer that the defendant was armed and dangerous. *Sibron v. State of New York*, 392 U.S. at 64, 88 S.Ct. at 1903, 20 L.Ed.2d at 935. The first two acts no more give rise to reasonable fear of life or limb on the part of the police officer than it justifies arrest for committing a crime. *Sibron v. State of New York, supra.* Those facts may support Officer McMullin's investigative stop of defendant; but he promptly determined that defendant was not intoxicated, had a valid driver's license, and had registration for the vehicle. The State cites *State v. Hornbeck*, 492 S.W.2d 802 (Mo.1973), for the proposition that Officer McMullin's acquaintance with the defendant was a fact the officer could use in determining that it was necessary to do a "protective sweep" of the vehicle which defendant had been driving. The problem with that argument, in this case, is that there is no evidence that Officer McMullin knew defendant to be a "known police character." *State v. Hornbeck*, 492 S.W.2d 802. Officer McMullin testified he knew the defendant but the record is silent as to anything further about that acquaintanceship. Officer McMullin said he looked in the Lincoln for "my own safety's sake" but the record is devoid of facts articulated by Officer McMullin as to why he believed the defendant was dangerous or might easily gain access to weapons. For that matter, there are no facts articulated by Officer McMullin that he believed the defendant to be dangerous or that he might easily gain access to weapons. Officer McMullin's testimony was conflicting as to why he picked up the jacket. At certain points in his testimony, he said he did it for his own safety, but on other occasions, said, "I don't really know the reason why I did."

Finally, with regard to the handcuffs seen by the officer in the car, while possession of them might not be unlawful, the issue is whether or not the presence of the handcuffs in the car was some indication of the presence of a weapon. Being completely cognizant of the dangers to which law officers are constantly exposed,[7] this court, had it been setting as a trier of fact, may have weighed the evidence differently than did the trial court and determined that the presence of the handcuffs in the floorboard of the vehicle was an indicia of the presence of a weapon. However, in a marginal case such as this, if the trial court's ruling is plausible in light of the record viewed in its entirety, this court may not reverse even though it would have reached a different result had it been the trier of fact. *State v. Milliorn, supra; State v. Antwine*, 743 S.W.2d 51, 66 (Mo.banc 1987), cert. denied 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). There was substantial evidence to support the finding by the trial court that the initial

although the 'bright line' that we drew in Belton clearly authorizes such a search whenever officers effect a custodial arrest. An additional interest exists in the arrest context, i.e., preservation of evidence, and this justifies an 'automatic' search. However, that additional interest does not exist in the Terry context. A Terry search, 'unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime.... The sole justification of the search ... is the protection of the police officer and others nearby....' [B]ecause the interest in collecting and preserving evidence is not present in the Terry context, we require that officers who conduct area searches during investigative detentions must do so only when they have the level of suspicion identified in Terry."

7. In its brief, the State urges that "given the recent slayings of this State's lawmen precipitated by 'mere traffic stops', a per se rule allowing such sweeps should be allowed." This court is constitutionally required to follow the latest decisions of our Supreme Court and the United States Supreme Court.

search of the Lincoln automobile, seizure of the jacket, subsequent search of the jacket, and seizure of the revolver failed to comport with the limitations placed upon the scope of a protective search for weapons as spelled out in *Terry v. State of Ohio, supra; Sibron v. State of New York, supra; Michigan v. Long, supra,* and *State v. Cotterman, supra,* at 326.

■ The State argues, in the alternative, that even if Officer McMullin had no right to open the jacket during a "protective sweep," independent probable cause existed to open the jacket. Such argument is premised on the officer's testimony that *after* he picked up the jacket, felt it was heavy, and felt down near the pocket, he could feel the outline of what he believed to be a revolver. The argument is made without any citation of authority, but apparently the State claims the search of the jacket and seizure of the pistol did not violate the Fourth Amendment because of the "plain view" doctrine. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges. *Coolidge v. New Hampshire,* 403 U.S. at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583.

In the case at bar, Officer McMullin could not see the revolver by looking in; his finding of the revolver occurred after he picked up the coat, found it was heavy on one side, felt down near the pocket, felt what he believed to be the outline of a revolver, and then removed the weapon. His search of the jacket and discovery of the weapon was not incident to any legitimate reason for being present. It was not a search incident to an arrest, a *Terry* search for safety, nor any other original justification. The State's argument, based upon the plain view doctrine as an exception, is without merit.

■ After discovering the revolver, Officer McMullin ordered defendant to the front of the Lincoln and there performed a "patdown" search. During the search, he discovered the lip balm container, removed it from defendant's shirt pocket, opened it to see what was inside, and discovered a white powder which, when analyzed, was found to be methamphetamine. The State argues that the "patdown" search was incident to an arrest [8] of the defendant on felony weapon charges and that suppression of the methamphetamine was clearly erroneous. In support of its position, the State cites *Illinois v. LaFayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Giffin,* 640 S.W.2d 128, 132 (Mo.1982); *State v. McCabe,* 708 S.W.2d 288, 291 (Mo. App.1986), and *State v. Pettis,* 522 S.W.2d 12 (Mo.App.1975). These cases clearly establish that one of the exceptions to the search warrant requirement of the Fourth Amendment is that *if the arrest is valid,* a warrantless search may be conducted of the person and the area within his immediate control. *State v. Giffin, supra,* at 132. In *New York v. Belton, supra,* the Supreme Court held that the search of a car and the contents of containers inside it is permissible even if the car's occupants have been removed from the car, so long as the occupants *have been lawfully arrested.*

---

8. In its brief, the State says, "a lawful search incident to an arrest and/or an inventory search of a defendant's person after same is

permissible." It is noteworthy that the State does not characterize the arrest as "a lawful or legal arrest."

In this case, it is less than clear that Officer McMullin had arrested defendant at the time he made the "patdown" search. He may have had the unarticulated intent to place defendant under arrest, but certainly there was substantial evidence from which the trial court could have concluded that no arrest of the defendant had been effected at the time of the "patdown" search. If no arrest had been made, then, the State's argument that the search of the defendant's person was incident to a lawful arrest would have to be rejected. "It would be incongruous to give weight or credence to the state's argument that 'the search was equivalent to a search incident to a lawful arrest' when no such arrest occurred." *State v. Cotterman, supra,* at 328.

Officer McMullin testified that after he found the gun, defendant was not free to go, as it was his intention to arrest him for the weapons offense. Clearly, there was no evidence of any other reason for arresting defendant before the patdown search. The presence of the handcuffs was not cause for arrest. Defendant was not intoxicated. He had a valid driver's license. The motor vehicle was properly registered. Assuming that the officer's direction to defendant to go to the front of the car for a "patdown" search might be interpreted as an arrest, this court will consider the State's argument that the search of defendant was incident to an arrest.

The record is clear that the only possible source of probable cause for the arrest of defendant on a "weapons charge" was the presence of the revolver in a jacket in the back seat of the vehicle being operated by defendant. "[I]f an arrest without a warrant is to support an incidental search, it [the arrest] must be made with probable cause." *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 139 (1959); *Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543, 552–53, 39 A.L.R. 790, 802 (1925). The trial court here found that the gun should be suppressed because the search and seizure was unreasonable in violation of the Fourth Amendment protection. This court has found that there was sufficient substantial evidence to support the suppression of the gun. Therefore, Officer McMullin, in an illegal search, discovered evidence (the revolver) which provided the only fact upon which to base probable cause that defendant had committed a crime. It follows that the arrest of defendant, based upon that information, is unquestionably tainted. Nothing resembling probable cause to arrest defendant existed until the jacket was removed from the automobile and a search of it revealed the revolver.

> It is axiomatic that an incident search may not precede an arrest and serve as part of its justification.... Thus the search cannot be justified as incident to a lawful arrest.

*Sibron v. State of New York,* 392 U.S. at 63, 88 S.Ct. at 1902–03, 20 L.Ed.2d at 934–35.

The State cannot fall back on defendant's warrantless arrest on a "weapons charge" to constitutionally validate the search of defendant's person as being a search incident to a lawful arrest when the only probable cause for the warrantless arrest was the existence of the weapon found as a result of an illegal search and seizure. *State v. Cotterman, supra,* at 328. *See State v. Witherspoon,* 460 S.W.2d 281, 287 (Mo.1970); *Kansas City v. Butters,* 507 S.W.2d 49, 53 (Mo.App.1974). Search of the defendant, in this case, and seizure of the methamphetamine cannot be brought within the exception of a search incident to lawful arrest because, if defendant was arrested, it was for a "weapons charge." Such arrest was without probable cause since the weapon was discovered in an unlawful search.

■ The only other possible circumstance excusing compliance with federal and state search warrant requirements under the facts of this case would be a "patdown" search made pursuant to an investigative stop to see if defendant had weapons on his person that could be used to harm the officer. *Terry v. State of Ohio, supra; State v. Hensley,* 770 S.W.2d 730, 734 (Mo.App.1989). The *Terry* "stop and

frisk" exception, from its inception, has been limited in scope.

> A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. (Citation omitted.) Thus *it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby*, and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion. (Emphasis added.)

*Terry v. State of Ohio*, 392 U.S. at 25–26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908. The limited nature of the search authorized by *Terry* has previously been noted by this court. In *State v. Hensley, supra,* troopers saw a pickup parked on an outer road along I–44. They went to investigate. When they arrived, a passenger car had parked near the pickup. Two people were in the passenger car. A shotgun was in open view in the back seat. For safety's sake, the officers decided to "patdown" the men. During the patdown, Officer Paul felt a bulge, the size of a film canister in "Weber's" back pocket. Paul removed the film canister from Weber's pocket, opened it, sniffed it and detected what seemed to be the odor of marijuana. Officer Procter felt a small round cylinder he thought was a bullet in defendant Hensley's shirt. Officer Procter removed the object, which turned out to be a small vial. He then opened the vial, which contained what he suspected to be cocaine. In affirming suppression of the cocaine, this court said:

> The question is, after they "patted down" the two men, and felt nothing that even remotely resembled a weapon, did they have any legal right to continue with their search and remove items from the pockets of Hensley and Weber and use those items as evidence in a subsequent prosecution of Hensley? The answer is no....

> Here, Proctor and Paul knew, when they touched the objects in question through the clothing of Weber and Hensley, that they were not weapons which could be used to harm the officers.

Since they had such knowledge, no reasonably prudent man could possibly be in fear that the vial in Hensley's shirt pocket that Proctor thought was a bullet, or the small film canister found in Weber's pocket by Paul, was a weapon that could be used by Hensley or Weber to endanger the safety of the two officers. See, *Terry v. Ohio*, 392 U.S. at 29, 30, 88 S.Ct. at 1883, 1885. Under those circumstances, and since the law enforcement officers had no warrant and were not making a search incident to a legal arrest for probable cause, the extraction of the film canister from Weber's pocket and the vial from Hensley's pocket, and opening those receptacles for further examination, amounted to an illegal search in violation of the state and federal constitution.

*State v. Hensley,* 770 S.W.2d at 734–35.

Similarly, in *State v. Cotterman,* 544 S.W.2d 322, the court noted that the only indicium of a weapon upon defendant's person as a result of the frisk or patdown which was conducted was an unknown object or substance in defendant's right jacket pocket which felt like the butt of a small automatic. The object in the right jacket pocket was not an automatic but turned out to be a sum of money in the form of folded bills. The frisk or patdown failed to reveal any object which felt like or might have lead the trooper to believe that a weapon was contained in defendant's left jacket pocket. The officer made an exploratory search of defendant's left jacket pocket and removed an additional sum of money folded around a plastic bag with a white powdery substance. In reversing defendant's conviction because of the trial court's failure to suppress the controlled substance found in defendant's left jacket pocket, the court said:

> The search conducted with respect to defendant's left jacket pocket failed to comport with the limitations placed upon the scope of a protective search for weapons as spelled out in *Terry v. Ohio,* supra.

*State v. Cotterman, supra,* at 326. Detailed study of the record in the case at bar

does not reveal any evidence that during the "patdown" of defendant by Officer McMullin, the officer found anything to suggest the presence of a weapon in defendant's right front shirt pocket, either by feeling of the pocket or by visual observation. "Were it otherwise, it seems only fair to assume that the state would have presented evidence which indicated to [Officer McMullin] the presence of a weapon-like object in defendant's [right shirt] pocket before he intruded into that pocket." *State v. Cotterman, supra,* at 325. Indeed, when asked if he was looking for evidence and not weapons at that point, Officer McMullin answered, "Well, I don't guess I was really looking for anything, other than I did check the contents of the Chap Stick at the time." There was certainly evidence in this case which supported a finding that the search of defendant's right shirt pocket exceeded the bounds of a reasonable protective search for a weapon and went beyond the scope of a search for that purpose. The trial court did not commit error in suppressing the methamphetamine because there was evidence that the search could not be constitutionally upheld as a reasonable "stop and frisk" warrantless search within the purview of *Terry v. State of Ohio, supra.* *State v. Cotterman, supra; State v. Hensley, supra.*

It necessarily follows that any subsequent inventory search of the automobile and the seizure of the glass tube with white residue would be properly suppressed because it is tainted by reason of the initial illegal search of the vehicle and illegal search that occurred during the patdown search. *State v. Hensley, supra,* at 736.

The trial court's order sustaining defendant's motion to suppress evidence is affirmed.

FLANIGAN, C.J., and PARRISH, P.J., concur.