STATE of Missouri, Plaintiff–Appellant

v.

Arthur D. CAUDLE, Defendant–Respondent.

No. 19246.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 4, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 23, 1994.

Application to Transfer Denied
Oct. 25, 1994.

82

Thomas E. Mountjoy, Pros. Atty., Pat J. Merriman, Asst. Pros. Atty., Greene County, Springfield, for appellant.

Donald R. Cooley, Springfield, for respondent.

PARRISH, Chief Judge.

Arthur D. Caudle (defendant) was charged with possession of cocaine, a controlled substance. § 195.202, RSMo Supp.1992. He filed a motion to suppress evidence that, following an evidentiary hearing, was granted by the trial court. The state appeals the trial court's order suppressing evidence. § 547.200.1, RSMo 1986; Rule 30.02. This court reverses and remands with directions that the trial court deny the motion to suppress evidence.

On the morning of April 15, 1993, four police officers were at the premises of Econo-my Inn Motel on North Glenstone in Springfield, Missouri. Their purpose for being at the motel was not related to defendant or any of the circumstances that evolved to produce defendant's criminal charge or this appeal.

While at the motel, the manager of the premises told the police officers about events involving occupants of a room at the motel, Room 217, that the manager considered suspicious. The manager reported that since the occupants of the room moved in, there were "lots of phone calls and a large amount of foot traffic." The name of the person who rented the room was Angela Arenz.

One of the police officers who was present, Officer Richard Counts, had been called to another motel "[a]bout a month before" because of "the same type of suspicious activity" involving a room rented by Angela Arenz. Ms. Arenz told officer Counts on the prior occasion that she was a prostitute. A small amount of marijuana had been found in her purse. No weapons were found. Angela Arenz was not known to Officer Counts as a drug dealer.

Officer Counts was asked the following questions and gave the following answers:

Q. [by defendant's attorney] Okay. Had you had any information from sources other than the person behind the desk at the hotel as to who would have been in the room?

A. No.

Q. As to anybody in particular that had ever gone to the room?

A. No.

Q. As to any illegal transaction that ever occurred inside or right outside the room?

A. No.

Q. Okay. The information that was given to you, was there ever any information that was told to you or that you knew of there at the hotel wherein someone told you or the people with you that drugs were in the room?

A. No.

Q. Okay. Was there any information that was given to you that suggested that there were weapons in the room?

A. No.

Officer Counts and the three other policemen went to Room 217. He knocked on the door. The three other officers stood in the hallway where they could not be seen. After a few minutes, Angela Arenz looked outside a window in the room that was next to the door. She opened the window. Officer Counts showed his police badge and identification and asked if he could come inside and talk to her. She agreed but told him she had to put on some clothing first. She opened the door but left the security chain in place while she dressed.

Officer Counts could see into the room while he awaited Ms. Arenz's return. He saw a second person moving about the room. Ms. Arenz returned to the door "approximately 15 to 20 seconds" later. She admitted Officer Counts into the room. He did not see another person and asked if anybody else was in the room. Ms. Arenz answered, "[Y]es." The other three police officers entered the room.

Officer Counts stepped to the back of the room where the bathroom door was standing "probably three-quarters open." He saw defendant sitting on the bathroom stool. Defendant was wearing gym shorts. Defendant's left hand was not visible—it was behind the door. Officer Counts drew his weapon and told defendant to move his hand where he could see it. Defendant removed his hand from behind the bathroom door and, keeping his fist closed, placed his hand in his lap. The police officer ordered defendant "to drop what he had in his hand." Defendant dropped a plastic bag containing a white powdery substance to the floor between his legs. Officer Counts seized the bag. It was later determined that the bag contained cocaine.

After Officer Counts seized the cocaine, the officers searched the room. They found two syringes in the bathtub wrapped in a washcloth and two marijuana cigarettes on a nightstand by the bed.

Defendant's Motion to Suppress Evidence sought suppression of "any alleged contraband seized as a result of a warrantless search and seizure by Springfield law enforcement officers or any testimony about same." The trial court ruled, by docket entry, "Motion sustained & reasons described on record." The trial judge announced the following findings:

First of all, the Court finds that there was no warrant to search and there was no warrant to arrest. The constitutional provisions, both the State and Federal, secure the defendant against unreasonable search and seizure. So the question is: What is reasonable in this case? Or whether or not this is unreasonable is really the question.

The defendant was an occupant of the room, apparently rented by someone else, and there was another person and granted permission on the request of the police officer for the police officer to enter the room.

There was no request—no evidence of any request, and therefore the Court finds there was no request made upon the occupants of the room to search and no consent to search the room.

The police officer was in the room. There was no responsibility on the parties in the room to be unarmed but even if there were such a responsibility, the police officer had the right to leave the room or to inquire about weapons or to look for weapons.

In looking for weapons, which is obviously what he did, he looked to see if anyone was armed. He did not see any weapons except the closed fist.

The Court finds and believes that there is no weapon that would have been a threat to the officers that could have been concealed in the fist under those circumstances.

Therefore, the order to the defendant to open his fist and drop whatever was in it was a seizure and an unlawful seizure.

Therefore, the motion to suppress is sustained.

The state contends the trial court erred in granting defendant's Motion to Suppress Evidence in three respects. The state argues that because the police officers were lawfully on the premises where defendant was found, (1) "[defendant] lacked any constitutionally protected interest in his closed fist"; (2) "the officer's request [for defendant to drop what he was holding in his closed fist] was a legitimate part of [the officer's] concerns for officers' safety"; and (3) "Officer Counts had established sufficient probable cause to believe that [defendant] was in possession of contraband at the time that [Officer Counts] ordered [defendant] to move his hand into plain view and drop whatever was concealed therein."

■ Defendant concedes the state's claim that Officer Counts entered Room 217 lawfully; that Angela Arenz, the person who rented the room—its possessor, had granted permission to enter the room. This court agrees. *See State v. Gailes,* 428 S.W.2d 555, 558 (Mo.1968). The issue presented is whether Officer Counts, once having entered the motel room, had authority to require defendant to place the hand that was shielded behind the bathroom door within the officer's sight; to thereafter require defendant to drop whatever the hand held; and to seize the item that fell to the floor.

Officer Counts was the only witness at the trial court's hearing on defendant's Motion to Suppress Evidence. He testified that he searched defendant's person out of concern that defendant "possibly could have a weapon." He could not see what was in defendant's left hand, so he ordered defendant to remove his hand from behind the bathroom door and drop what he was holding.

As explained in *State v. Hutchinson,* 796 S.W.2d 100 (Mo.App.1990):

The general principle is that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *State v. Quinn,* 565 S.W.2d 665, 670 (Mo.App.1978). One of the exceptions is that, even in the absence of probable cause for arrest, officers may search the person being interviewed and the immediate vicinity for weapons where the officers have reason to believe their safety is endangered. *Terry v. State of Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Sibron v. State of New York,* [392 U.S. 40, 59, 88 S.Ct. 1889, 1901, 20 L.Ed.2d 917, 932 (1968) ]. This has always been a strictly limited right.

*Id.* at 104 (footnote omitted).

■ When the justification for a warrantless search of a person being interviewed is protection of the police officer conducting the interview and others nearby, the intrusion must be confined in scope so that the intrusion is "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *State v. Hutchinson, supra;* and *State v. Hensley,* 770 S.W.2d 730, 735 (Mo.App.1989), quoting *Terry v. State of Ohio, supra,* 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.

■ In order for a protective search to be justified, there must be a reasonable belief that the one being interviewed poses a danger and that danger may arise from the area surrounding the person. *Hutchinson, supra,* quoting *Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201, 1219–20 (1983). *See also State v. Kovach,* 839 S.W.2d 303, 311 (Mo.App.1992).

■ Officer Counts knew a second person was in the motel room. When he entered the room that person was not in sight. Upon discovering defendant in the bathroom with a partially opened door, the officer could not see one of defendant's hands. Officer Counts was concerned that defendant might be armed. That concern was reasonable. The possibility that a person who is the subject of police inquiry is armed can suffice to make a show of guns by police officers reasonable. *U.S. v. Jones,* 759 F.2d 633, 638 (8th Cir.1985).

When defendant brought his hand into Officer Counts' view, defendant's fist was closed, thereby precluding the officer from knowing if defendant possessed an implement or weapon that could produce physical harm to the officers and others present. Although this court found no case in which a suspect who was subject to a *Terry* search was required to drop an item in his or her closed fist, the principles pronounced in *State v. Hensley, supra,* and *State v. Riley,* 704 S.W.2d 691 (Mo.App.1986), are instructive.

In *Hensley,* two highway patrol troopers saw a passenger car and a pickup truck parked alongside the roadway. No one was in the pickup truck. Two persons were in the car. Hensley was in the front seat on the passenger side. The troopers approached the car to see if they needed assistance. One of the troopers testified that they had no reason to believe that either occupant of the car had committed a crime. A shotgun, a legal weapon, was visible in the back seat of the car.

The occupants got out of the car. The troopers decided to "pat down" the occupants for personal protection to see if either was "carrying concealed '[s]mall caliber weapons or handguns.'" 770 S.W.2d at 732. The "pat down" disclosed a small round cylinder in the left breast pocket of Hensley's shirt. The officer removed the cylinder. It was a vial containing what was suspected to be cocaine. Based on the seizure, Hensley was charged with felony possession of cocaine.

The court held that the facts in *Hensley* justified the troopers making an investigative stop of the occupants of the car and making a limited pat-down search to see if either was carrying weapons that could be used to harm the officers. The determinative question, however, was, "[A]fter they 'patted down' the two men, and felt nothing that even remotely resembled a weapon, did they have any legal right to continue with their search and remove items from the pockets of Hensley and Weber [the other occupant of the car] and use those items as evidence in a subsequent prosecution of Hensley?" *Id.* at 735–36. The court declared, "The answer is no." *Id.* at 736.

The court explained that the troopers knew when they touched the items through the clothing of the men who were searched, the items were not weapons that could be used to harm the officers. "Since they had such knowledge, no reasonably prudent man could possibly be in fear that the vial in Hensley's shirt pocket that [the trooper] thought was a bullet, or the small film canister found in Weber's [the other man's] pocket ... was a weapon that could be used ... to endanger the safety of the two officers." *Id.* The court held:

> Under those circumstances, and since the law enforcement officers had no warrant and were not making a search incident to a legal arrest for probable cause, the extraction of the film canister from Weber's pocket and the vial from Hensley's pocket, and opening those receptacles for further examination, amounted to an illegal search in violation of the state and federal constitution.

*Id.*

In *Riley* officers stopped a pedestrian (Riley) one block from an abandoned car. Riley fit the description of a person who had been reported as being in the abandoned car—its occupants fled from the car after it hit another vehicle. The officers took Riley to a police station. Although Riley consented to go there, the court held that this constituted an arrest because "submission to authority is not voluntary consent." 704 S.W.2d at 694.

While at the police station, Riley was told to remove "gum" from his mouth. He refused and was verbally abusive. Three officers held Riley and a fourth grabbed Riley's throat. Riley spat out a cellophane packet that contained three capsules later determined to be heroin.

The court concluded that an arrest had occurred and that the arrest was illegal. The officers were entitled to make an investigative stop of Riley. They did not have probable cause that he had committed an offense—there was no report that he had been the driver of the abandoned car. Riley's conviction for possession of the heroin in the packet he spat out was reversed. The seizure of the substance was the product of an illegal search.

This court concludes that Officer Counts' direction for defendant to drop whatever he was holding in his closed fist is analogous to a pat-down search. If defendant held anything in his closed fist, the object was at his immediate disposal. It was in his hand readily available for application on any thing or person within defendant's reach or which might later come within his reach. Under the facts in this case, this court determines that the order for defendant to drop anything he was holding was no more intrusive than a pat-down of a suspect's pockets.

The difficulty in reaching a decision in this case turns on the issue of whether the officers had a right to seize the object that defendant dropped. The nature of the container that was dropped is the decisive factor. It was a clear plastic bag. Its contents, the white powdery substance, were readily visible. Unlike in *Hensley* and in *Riley,* the officers' intrusion here was based on what they plainly saw, a substance that appeared to be contraband.

This court holds that the direction for defendant to drop what he held in his closed fist amounted to no more intrusive conduct than a pat-down search; that because the nature of the contents of the container that defendant dropped were discernable without further physical intrusion, the officers had probable cause to arrest defendant and seize the container incidental to that arrest.

For the foregoing reasons, this court concludes that the order suppressing the evidence seized was not plausible on the basis of the record in its entirety. The trial court's order granting defendant's Motion to Suppress Evidence is reversed. The case is remanded with directions that the trial court deny defendant's motion to suppress evidence.

SHRUM and MONTGOMERY, JJ., concur.