Arthur ALBERS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7446.

Court of Appeals of Alaska.

Dec. 28, 2001.

Chet Randall, Assistant Public Advocate, and Brant G. McGee, Public Advocate, Anchorage, for Appellant.

Maarten Vermaat, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

The question presented in this appeal is whether, during an investigative stop, the police may order or force the detained person to unclench their hand. Because the police have only limited authority to conduct a search during an investigative stop—an authority limited to ensuring officer safety—we hold that the police may order or force the detained person to open their hand only if the police have an articulable reason to suspect that the detained person is holding something that could endanger the police.

The superior court did not resolve this issue when it denied the defendant's motion to suppress. We therefore remand this case to the superior court with directions to make findings on this issue.

*Underlying facts*

A police officer observed two men, Arthur Albers and Emmanuel Rodriguez, walk into the alley behind a bookstore in downtown Anchorage. Suspecting that the men were engaged in illegal drug activity, the officer called for backup and then followed the two men.

When the officer rounded the corner of the building, he saw Rodriguez lighting a glass crack pipe. The officer ordered Albers and Rodriguez to stand and put their hands against the wall. Albers stood still and

raised his hands in the air, but he kept his left hand clenched. The officer repeatedly ordered Albers to unclench his hand, but Albers refused.

The officer held the two men at gunpoint until his backup arrived, and then the police ordered Albers to place his hands behind his back and open his left fist. When Albers complied, a small rock of crack cocaine dropped from his hand.

After Albers was indicted for possession of cocaine (fourth-degree controlled substance misconduct), he asked the superior court to suppress the cocaine: Albers argued that the police had conducted an illegal search when they ordered him to open his hand. The superior court denied the suppression motion. Albers then went to trial and was convicted. He now renews his suppression arguments.

*Police authority to order a detained person to open their hand during an investigative stop*

The State concedes that the police did not have probable cause to arrest Albers for drug possession or for any other offense. For his part, Albers does not dispute that the police had reasonable suspicion to detain and question him regarding Rodriguez's drug offense. Thus, to resolve whether the police could lawfully force Albers to open his hand, we must examine the scope of police authority to search a detained person during an investigative stop.

When police officers conduct an investigative stop, they often contemporaneously perform a "pat-down search" of the detained person—*i.e.*, a tactile probing of the detained person's external clothing for weapons. In the present case, the police performed a slightly different type of search: they ordered Albers to unclench his hand and reveal what was there. Courts from around the country all but unanimously agree that an order of this kind is equivalent to a pat-down search—and that it requires the same justification as a pat-down of the detainee's clothing.[1]

1. *See Reyes v. United States*, 758 A.2d 35, 38–39 (D.C.App.2000); *State v. Martin*, 738 So.2d 98, 103–04 (La.App.1999); *Upshur v. United States*, 716 A.2d 981, 984 (D.C.App.1998); *People v. Cox*,

The fact that the police have sufficient justification for conducting an investigative stop does not invariably mean that they will have justification for performing a weapons pat-down. Under the United States Supreme Court's decisions in *Sibron v. New York*[2] and *Terry v. Ohio*[3], the test is whether the officer was aware of specific and articulable facts that would support a reasonable inference that the detainee was armed or possessed some other article that could pose a danger to the officer.

Thus, in cases where the detainee's actions gave reason to believe that the detainee was holding or reaching for a weapon, or where the circumstances otherwise provided reason to suspect that the detainee might be armed or otherwise pose a danger, appellate courts have upheld searches of detainees' closed hands.[4] By the same token, however, appellate courts have struck down searches of detainees' closed hands when the facts did not give rise to a concern for officer safety.[5]

We, too, conclude that the legality of the search of Albers's hand turns on whether the officers had articulable reasons to apprehend some danger to their safety. In *Coleman v. State*[6] and *Ozenna v. State*[7], the Alaska Supreme Court cautioned that police authority to conduct investigative stops should not be construed so broadly as to allow officers to perform searches for evidence of possessory offenses on less than probable cause. If we are to carry out this policy, we must insist that pat-down searches of a detainee's clothing—or, as in the present case, searches of a detainee's clenched or closed hand—be limited to their original rationale, which is to ensure officer safety. Such a search will be justified only when there is some articulable reason to believe that the detainee possessed a weapon or otherwise posed a threat to the officer's safety. The search is not justified when it is supported solely by a suspicion that the detainee may be hiding evidence of a possessory drug offense.

We emphasize that, during an investigative stop, a pat-down search is justified whenever the circumstances would warrant a reasonably prudent person in suspecting that the detainee was armed or otherwise posed a threat to the officer. The officer need not have probable cause to believe that the detainee is armed. We recognize that police officers, in performance of their duty, often place themselves in situations of potential peril. The courts should not increase that peril by unjustifiably limiting officers' ability to protect themselves. As the Washington Court of Appeals said in *State v. Serrano*, appellate courts should not engage in "pointless hair-splitting" that requires officers to "wager [their] physical safety against the

295 Ill.App.3d 666, 230 Ill.Dec. 354, 693 N.E.2d 483, 488 (1998); *State v. Williams*, 249 Neb. 582, 544 N.W.2d 350, 353–54 (1996); *Mayhue v. State*, 659 So.2d 417, 418–19 (Fla.App.1995); *State v. Caudle*, 884 S.W.2d 81, 86 (Mo.App. 1994); *State v. Bridges*, 610 So.2d 827, 829 (La. App.1992); *Payne v. Commonwealth*, 14 Va.App. 86, 414 S.E.2d 869, 870–71 (1992); *State v. Pressley*, 64 Wash.App. 591, 825 P.2d 749, 753–54 (1992); *Shackelford v. State*, 579 So.2d 306, 307 (Fla.App.1991); *State v. Glover*, 116 Wash.2d 509, 806 P.2d 760 (1991) at 763 (concurring opinion of Justice Guy, joined by two other members of the court) and at 766 (dissenting opinion of Justice Utter, joined by one other member of the court); *State v. Halverson*, 21 Wash.App. 35, 584 P.2d 408, 410 (1978).

   *But see State v. Parker*, 645 So.2d 1309, 1310 (La.App.1994) (holding that a defendant who was legitimately stopped on suspicion of drug trafficking had no expectation of privacy in the contents of his clenched fist).

**2.** 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968).

**3.** 392 U.S. 1, 23–24, 26–29, 88 S.Ct. 1868, 1881, 1882–84, 20 L.Ed.2d 889 (1968).

**4.** *See Reyes v. United States*, 758 A.2d 35, 38–39 (D.C.App.2000); *State v. Martin*, 738 So.2d 98, 103–04 (La.App.1999); *State v. Williams*, 249 Neb. 582, 544 N.W.2d 350, 353–54 (1996); *State v. Caudle*, 884 S.W.2d 81, 86 (Mo.App.1994); *State v. Bridges*, 610 So.2d 827, 829 (La.App. 1992); *State v. Pressley*, 64 Wash.App. 591, 825 P.2d 749, 753 (1992).

**5.** *See Jackson v. United States*, 742 A.2d 883, 884–86 (D.C.App.1999); *Payne v. Commonwealth*, 14 Va.App. 86, 414 S.E.2d 869, 870–71 (1992); *Shackelford v. State*, 579 So.2d 306, 307 (Fla.App.1991).

**6.** 553 P.2d 40, 44–47 (Alaska 1976).

**7.** 619 P.2d 477, 479 (Alaska 1980).

odds that a [potential] assailant is actually unarmed".[8]

 Thus, a search of a suspect's hand would be justified where the suspect "makes a sudden move to his pocket notwithstanding a police order to keep his hands in plain view".[9] Likewise, "it is proper for [an] officer to grab and force upon a suspect's hand [if] there is reason to believe that the suspect may have a weapon in his hand."[10]

 But appellate courts also have a constitutional duty to protect citizens from overzealous police officers, a duty "to safeguard the privacy and security of individuals against arbitrary invasions" by agents of the government.[11] Were we to affirm pat-down searches in the absence of any reason to apprehend danger to the officer, we would be neglecting this duty.

 As the United States Supreme Court said in *Terry v. Ohio*, a pat-down search must not be based on an officer's "volatile or inventive imagination", nor can it be allowed to degenerate into "an act of harassment". Rather, a pat-down search must be "the tempered act" of a police officer "who[,] in the course of an investigation[,] had to make a quick decision as to how to protect himself and others from possible danger".[12]

*We remand this case to the superior court, directing the court to reconsider Albers's suppression motion in light of this opinion*

As we have explained here, the police could not lawfully order Albers to open his hand (or forcibly seize what was in his hand) unless Albers's actions and/or the surrounding circumstances gave the police an articulable reason to think that Albers might be holding a weapon or other dangerous instrument in his hand. When the superior court decided Albers's suppression motion, the court did not expressly address this question. We therefore REMAND Albers's case to the superior court with directions to re-assess Albers's suppression motion under the law explained here.

Within 90 days, the superior court should issue supplemental findings and forward them to us. The parties will then have 30 days to file memoranda addressing the superior court's supplemental findings. When we have received the supplemental findings and the parties' memoranda, we will renew our consideration of Albers's appeal.

8. 14 Wash.App. 462, 544 P.2d 101, 106 (1975).

9. Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (3rd ed.1996), § 9.5(b), Vol. 4, p. 273.

10. *Id.,* § 9.5(b), Vol. 4, p. 273 n. 143.

11. *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

12. 392 U.S. 1, 28, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).