**Arthur ALBERS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7446.**

Court of Appeals of Alaska.

June 18, 2004.

Chet Randall, Portland, Maine, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

A police officer saw Arthur Albers and a second man walk into an alley behind a bookstore in downtown Anchorage. When the officer followed them into the alley, he saw Albers's companion crouching down and lighting a crack pipe. At this point, the officer called for backup and he initiated an investigative stop of Albers and his companion.

At the officer's command, Albers put his hands into the air, but he kept his left hand clenched. He refused repeated commands to open his hand. Finally, at the command of the police, Albers put his hands behind him and opened his left hand; a small rock of crack cocaine fell out. This discovery led to Albers's conviction for fourth-degree misconduct involving a controlled substance.[1] The question in this appeal is whether the police were authorized to make Albers open his hand.

As we explained in our previous decision in this case—*Albers v. State*, 38 P.3d 540 (Alaska App.2001)—the State concedes that the police did not have probable cause to arrest Albers until they discovered the cocaine in his hand.[2] Thus, the officers' authority to open Albers's hand must be assessed under the law governing investigative stops. In our previous decision, we held that the forcible opening of a suspect's hand (or an order

directing the suspect to open their hand) "is equivalent to a pat-down search[,] and [thus] it requires the same justification as a pat-down of the detainee's clothing".[3]

[T]he test is whether the officer was aware of specific and articulable facts that would support a reasonable inference that the detainee was armed or possessed some other article that could pose a danger to the officer.

*Albers*, 38 P.3d at 542. Because the superior court did not apply this test when it initially evaluated the officers' authority to search Albers's hand, we directed the superior court to reconsider the legality of this search.

Although the testimony previously presented in the superior court had more or less clarified the particular facts of the officers' encounter with Albers, Superior Court Judge Larry D. Card allowed the State (over Albers's objection) to present additional testimony concerning the hazards faced by the police when making felony drug arrests and investigative stops. After hearing this testimony, Judge Card again concluded that the search of Albers's hand had been justified. We now review that decision.

*Albers's argument that Judge Card should not have taken additional testimony during the proceedings on remand*

Before we reach the merits of Judge Card's decision upholding the search of Albers's hand, we must first address a preliminary issue. Albers argues that Judge Card exceeded his authority, or at least abused his discretion, when he allowed the State to present testimony concerning the hazards faced by the police when they detain people in connection with the investigation of felony drug offenses. Albers notes that, in our prior decision in this case, we did not explicitly direct Judge Card to take additional testimony.

Although we did not expressly order the superior court to re-open the evidence, we did direct the superior court to consider a new aspect of the case. Albers cites no legal

---

1. AS 11.71.040(a)(3)(A).

2. 38 P.3d at 541.

3. *Id.*

authority that would bar a trial court from re-opening the evidence during proceedings on remand if the trial court concludes that additional testimony is required to fully answer a new question posed by an appellate court. Indeed, this Court recently held that, at least in the absence of a contrary directive from the appellate court, a trial court has the implicit discretion to re-open the evidence during proceedings on remand. *See Crawford v. State*, 87 P.3d 824, 825 (Alaska App. 2004).

Albers also argues that it was unfair to give the State an opportunity to supplement the record regarding the potential justification for the search of Albers's hand. But, again, we note that we directed the superior court to consider a new aspect of the case. There was no manifest unfairness in allowing the parties to offer supplemental testimony on this new issue. Both parties—Albers as well as the State—had the opportunity to offer supplemental testimony. We conclude that Judge Card did not abuse his discretion when he decided to re-open the evidence.

### The search of Albers's hand

█ In our previous decision in this case, we stated that the legality of the search of Albers's hand "turn[ed] on whether the officers had articulable reasons to apprehend some danger to their safety".[4] Our prior decisions in this area suggested that, in order to meet this test, the officers would need some articulable reason to believe that Albers's hand contained a weapon. But recently, in *State v. Wagar*, 79 P.3d 644 (Alaska 2003), our supreme court rejected this formulation as too narrow. The supreme court concluded instead that an officer can justifiably remove and examine an object from a pocket (or hand) during a frisk for weapons if the officer reasonably believes that the object could be used as a weapon.

In *Wagar*, the police approached a vehicle whose occupants were suspected of possessing and using cocaine.[5] Wagar was one of the occupants of the car. He put his hands into the pockets of his pants, even though the officers told him not to do that.[6] Then Wagar turned his body sideways to the officer—an action which, according to the officer's testimony, betokened an attempt to hide something or to gain a better posture for fighting.[7] The officer responded by conducting a pat-down of Wagar's clothing for weapons (leading to the discovery of a glass vial containing cocaine).[8] The issue on appeal was whether the seizure of the vial during this pat-down search was justified.

When this Court reviewed Wagar's case, we concluded that the seizure of the vial was not justified because (1) it did not appear to be a normal weapon and (2) the officer had no affirmative indication that Wagar possessed an atypical weapon.[9] But the supreme court concluded that this test was too narrow. The true question, the supreme court declared, was whether the officer conducting the pat-down reasonably believed that the object in Wagar's pocket "[might] be used as a weapon".[10]

The overarching rationale [for pat-down searches] is officer safety. As the [United States Supreme Court observed in *Terry v. Ohio*[11]]: "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." The distinction between objects that are not shaped like typical weapons but may nevertheless be weapons and similar objects that are merely potentially usable as weapons seems extremely tenuous. If there is a difference[,] it lies in the intent of the bearer of the object. But this intent is not necessarily apparent to the officer conducting the frisk. In our view, the distinction inherent in the court of

---

4.  *Albers*, 38 P.3d at 542.

5.  79 P.3d at 646.

6.  *Id.*

7.  *Id.*

8.  *Id.* at 646–47.

9.  *Wagar v. State*, Alaska App. Memorandum Opinion No. 4458 (September 26, 2001), pp. 2–3; 2001 WL 1143307 at *1.

10.  *Wagar*, 79 P.3d at 648.

11.  392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

appeals's decision is too vague to serve as a dividing line between permissible and impermissible searches that are conducted to ensure officer safety.

*Wagar,* 79 P.3d at 648.

According to the testimony presented by two police officers during the proceedings on remand in Albers's case, it is common for drug dealers and drug users to carry weapons. Moreover, drug dealers and drug users commonly carry implements that are small enough to fit in one's hand and that might be used as weapons: such things as fingernail files, glass crack pipes, razor blades, and small pocket knives.

It is true, as Albers points out in his brief, that the officers conceded that many people walking the streets of Anchorage (or anywhere else) have these same types of objects in their pockets or purses. But the legality of the officers' actions in Albers's case must be evaluated in the context of an investigative stop for a felony drug offense.

In *Terry v. Ohio*,[12] the United States Supreme Court declared that when a court evaluates whether a pat-down search for weapons was justified, the court may take into account the nature of the criminal activity that the officer reasonably suspects is occurring. 392 U.S. at 28, 88 S.Ct. at 1883. (In *Terry,* for instance, the suspected criminal activity was robbery.)

This Court, too, has acknowledged that when a court evaluates the legality of a pat-down search conducted during an investigative stop, the court can take into consideration the presumption that people engaged in felony conduct are more likely to be armed and/or to resort to violence when confronted by the police. *See Gutierres v. State,* 793 P.2d 1078, 1081 (Alaska App.1990). Indeed,

in *Wilburn v. State,* 816 P.2d 907 (Alaska App.1991), this Court suggested that a pat-down search for weapons might be justified whenever a police officer conducts an investigative stop of a person suspected of committing a felony drug offense in the officer's presence.[13]

As Albers correctly points out, many aspects of his encounter with the police suggested that he was not an immediate danger, and that his refusal to open his hand indicated no more than his desire to hide drugs from the officers. Albers's hands were in plain sight throughout the encounter. There was no metal or other material showing between Albers's fingers, nor was there any obvious bulge in his fingers or protrusion from his hand. Albers made no aggressive gestures and uttered no aggressive words. Indeed, he was compliant with all of the officers' commands except for his refusal to open his hand.

Nevertheless, the situation was potentially a volatile one. The officers had interrupted Albers and his companion while Albers's companion was apparently engaged in a felony drug offense. The police did not know what was in Albers's hand, and he refused to open his hand. Although Albers's hand could have contained drugs, it also might have contained an object that could be used as a weapon. And, as our supreme court noted in *Wagar,* if Albers was carrying such an object in his hand, the officers' safety would hinge "[on] the intent of the bearer of the object".[14]

We note that other courts have upheld searches of a suspect's hand in similar circumstances.[15]

**12.** 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**13.** 816 P.2d at 911–12.

**14.** 79 P.3d at 648.

**15.** *See State v. Bridges,* 610 So.2d 827, 829 (La. App.1992) (upholding the search of a suspected drug dealer who would not open his clenched hand; *Hendren v. Commonwealth* (unpublished), 2000 WL 1052161, *3–*4 (Va.App.2000) (upholding the search of a motorist's hand after the motorist initially refused to stop his car at a

traffic checkpoint, then kept his right hand closed and tried to hide it in his pants pocket); *People v. Shackelford,* 37 Colo.App. 317, 546 P.2d 964, 967 (1976) (upholding the search of a suspect's hand during an investigative stop after the suspect kept his hand closed and refused to open it). *See also Worthey v. State,* 805 S.W.2d 435, 437, 437–39 (Tex.Crim.App.1991) (upholding the search of a suspect's purse when, during an investigative stop, the suspect disobeyed the officer's order not to move or hide her hands).

For these reasons, we uphold the superior court's conclusion that the search of Albers's hand was justified under the facts of this case.

## Conclusion

The judgement of the superior court is AFFIRMED.